MARC E. HANKIN (SBN: 170505)
E-Mail: Marc@hpl.law
ELODIE BARDON (SBN: 352856)
E-Mail: Elodie@hpl.law
**HANKIN PATENT LAW,**
A Professional Corporation
11414 Thurston Cir
Los Angeles, CA 90049
Tel: (310) 979-3600

Attorneys for PLAINTIFF,
**MMAS RESEARCH LLC**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MMAS RESEARCH LLC, a Washington limited liability company,<br><br>    Plaintiff<br><br>    v.<br><br>University of Leeds; University College London; Michigan State University; Betsi Cadwaladr University Health Board; East and North Hertfordshire NHS Trust; DOES 1 through 10, inclusive,<br><br>    Defendants. | CASE No. 2:25-cv-06314<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Breach of Contract<br>2. 17 U.S.C. § 501 – Infringement of Copyright<br>3. Misappropriation of Trade Secrets under the Defend Trade Secrets Act (DTSA) and State Law<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

Plaintiff MMAS RESEARCH LLC ("MMAS Research," or "Plaintiff") for its causes of action against Defendants: University of Leeds ("Leeds"), University College London ("UCL"), Michigan State University ("MSU"), Betsi Cadwaladr University Health Board ("BCUHB"), East and North Hertfordshire NHS Trust ("ENHNT"), and DOES 1 through 10, inclusive ("DOES") (collectively herein "Defendants"), alleges as follows:

**JURISDICTION AND VENUE**

1. This action arises, in part, under the 17 U.S.C. § 501 – Infringement of Copyright, including all sections created or amended by the Digital Millennium Copyright Act conferring federal question jurisdiction under 17 U.S.C. § 101, *et seq.*, and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

2. This action arises, in part, under the Defend Trade Secrets Act ("DTSA") 18 U.S.C. § 1836, conferring federal question jurisdiction.

3. Additionally, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000.00 and there is a complete diversity of citizenship between the Parties.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because: (a) a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District; (b) the unlawful acts of Defendants complained of herein have been committed within this District and have, had, or will have had effect in this District; (c) the written agreements identified and described more thoroughly below were entered into by the Parties in this District; and (d) the written agreements identified and described more thoroughly below, by their terms, stipulated to jurisdiction and venue in this District.

5. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(c)(3) because one or more defendants are amenable to personal jurisdiction in this District.

**THE PARTIES**

6. Plaintiff is a Washington limited liability company.

7. Plaintiff is the owner of the "MMAS RESEARCH WIDGET CODE" (the "Morisky Widget"), registered under United States Copyright Registration No. TX 8-816-517 (Registration date December 3, 2019) (the "Morisky Widget Copyright").

8. On information and belief, Defendant University of Leeds ("Leeds") is a university located at Woodhouse, Leeds LS2 9JT, United Kingdom.

9. On information and belief, Defendant University College London ("UCL") is a university located at Gower St, London WC1E 6BT, United Kingdom.

10. On information and belief, Defendant Michigan State University ("MSU") is located at 426 Auditorium Road, East Lansing, MI 48824.

11. On information and belief, Defendant Betsi Cadwaladr University Health Board ("BCUHB") is a university located at, Ysbyty Gwynedd, Penrhosgarnedd, Bangor, Gwynedd, LL57 2PW, Wales.

12. On information and belief, Defendant East and North Hertfordshire NHS Trust ("ENHNT") is located at Lister Hospital East Hall Block, Lister Hospital, Coreys Mill Lane, Coreys Mill Ln, Stevenage SG1 4AB, United Kingdom.

13. Plaintiff is informed and believes and thereon alleges that Defendants DOES 1 through 10, inclusive (the "Doe Defendants," and collectively with the above-named defendants, the "Defendants"), are other parties not yet identified are the subject of this lawsuit. The true names, whether corporate, individual, or otherwise, of DOES 1 through 10, inclusive, are presently unknown to Plaintiff, which therefore sues Defendants by such fictitious names, and will seek leave to further amend this complaint to show their true names and capacities when their identities have been determined.

14. Plaintiff is informed, believes, and thereupon alleges that Doe Defendants were, and are, in some manner responsible for the actions, acts, and omissions alleged, and for the damage caused by Defendants and are, therefore, liable for the damage caused to Plaintiff.

15. Plaintiff is informed, believes, and thereon alleges that Defendants did, at all material times, foresee the nature and extent of the probable consequences of their

1  acts in proximately causing said damage to Plaintiff.

2    16. Plaintiff is informed, believes, and thereon alleges that, at all relevant
3  times, Defendants controlled and participated in the acts alleged herein.

### FACTS RELEVANT TO ALL ALLEGATIONS

  17. On or about November 20, 2020, the University of Leeds and Plaintiff executed a perpetual Morisky Widget license.

  18. In February 2021, Plaintiff and Hana Morrissey of the University of Wolverhampton trained and certified Defendant Leeds clinicians and members of the Rosetta study team on the trade secret Morisky Widget MMAS-8 scoring and coding criteria.

  19. On information and belief, Defendant Leeds designed and operated the ROSETA breast study in the UK, an interventional trial. In the ROSETA study, a registered nurse (RN) sent patients a link to an electronic MMAS-8 questionnaire that was administered from the Clinical Trials Research Unit (CTRU).

  20. On information and belief, in their perpetual Morisky Widget license, Defendant Leeds fully understands and agrees that the MMAS Research Widget Software, United States Copyright Registration TX8816577 cannot be used, transferred, divulged, distributed, published, or otherwise exploited without the written permission of Licensor.

  21. On information and belief, in their perpetual Morisky Widget license, Defendant Leeds fully understands and agrees pursuant to this License Agreement, the © MMAS Widget Software can only be used by University of Leeds OR third parties who have been trained and certified by the Licensor (or his designee) on the MMAS Research Widget Software.

  22. On information and belief, Defendant Leeds acknowledges and agrees that Licensor's MMAS Widget Software Coding and Scoring criteria are trade secrets of Plaintiff and, as such, Licensee is forbidden from publicizing Widget Coding and Scoring criteria in any form without the expressed, written consent from Plaintiff.

Defendant Leeds further acknowledged and agreed that the trade secrets provision shall survive the termination of this License Agreement.

23. On information and belief, Defendant Leeds acknowledges and agreed that Plaintiff reserves the right to inspect all Morisky Widget results only in cases of administrative or scientific misconduct.

24. On October 10, 2022, the Roseta Team at Roseta leeds.ac.uk sent Plaintiff an email that reported Defendant Leeds sent the MMAS-8 questionnaire to participants for completion at baseline, 2 month follow up and 4 months follow up time points. So far, **31** participants are included in the study.

25. On October 10, 2022, Plaintiff sent an email to the Roseta Team how they score and coded the 93 MMAS-8 tests administered to patients.

26. On October 21, 2022, Emma McNaught of the Roseta study team sent Plaintiff an email stating that the Roseta team would not be scoring and coding MMAS-8 tests until the final analysis point.

27. In interventional studies, it is not proper to wait until the end of the study to score and code assessments. In an interventional clinical trial of breast cancer patients, it is critical to score and code MMAS-8 at baseline and each follow up appointment in order to provide the correct intervention for the patient that is non adherent to their breast cancer medication.

28. On information and belief, Defendant Leeds failure to score and code MMAS-8 tests in an interventional clinical trial qualified as both scientific and administrative misconduct.

29. Plaintiff made several attempts to inspect the MMAS-8 tests administered by Defendant Leeds.

30. On December 15, 2022, Geraldine Murden, Defendant Leeds lawyer, wrote to Plaintiff's lawyer, Paul Haberman, that "The trial team has been transparent with MMAS throughout, and it is not accepted that there has been any impropriety on the part of the University. Purely as a pragmatic response and with no admission

whatsoever of any wrong doing, the University is agreeable to discontinuing further use of the tests and the widget, and trust that this is now an end of the matter."

31. On December 20, 2022, Plaintiff's lawyer wrote to Leeds' lawyer acknowledging receipt of the December 15, 2022 email, and advising that MMAS Research will pursue a legal resolution of this matter.

32. On information and belief, in February 2023, the ROSETA team published an article entitled Refining and optimizing a behavioral intervention to support endocrine therapy adherence (ROSETA) in UK women with breast cancer: protocol for a pilot fractional factorial trial, (Accused Study) three months after the University of Leeds terminated their Morisky Widget license. https://pmc.ncbi.nlm.nih.gov/articles/PMC9900066/

33. On information and belief, the ROSETA Study team wrote in the Accused Study article, "The following patient-reported measures will be used the *Morisky Medication Adherence Scale (MMAS-8)82*. An eight-item, patient report measure for assessing medication adherence. It provides an overall adherence score, as well as a score for intentional and non-intentional non-adherence.

34. On information and belief, the citation **82** is for the Morisky DE, Green LW, Levine DM. Concurrent and predictive validity of a self-reported measure of medication adherence. Med Care 1986; 24:67–74.

35. On information and belief, the ROSETA authors cited a reference for the MMAS-8 which was in fact a reference for the 1986 four item Morisky Green Levine Scale.

36. On information and belief, the MMAS-8 produces a single score for medication adherence, while only the Morisky Widget MMAS-8 produces three scores, overall adherence and two additional scores, one for intentional and one for non-intentional-adherence.

37. On information and belief, the ROSETA team authors misappropriated Morisky Widget MMAS-8 trade secret scoring and coding criteria in violation of the

1  Defend Trade Secrets Act.

2  38. On information and belief, on January 31, 2025, the ROSETA team
3  members published an article (Accused Study 2) entitled, Supporting endocrine therapy
4  adherence in women with breast cancer: findings from the ROSETA pilot fractional
5  factorial randomized trial. https://pubmed.ncbi.nlm.nih.gov/39887069/

6  39. On information and belief, in Accused Study 2, the ROSETA team
7  reported that "Patient-reported outcome measures at baseline, 2- and 4 months assessed
8  medication adherence the Morisky Medication Adherence Scale. We ceased use of the
9  MMAS-8, as the key validation paper has since been withdrawn.

10 40. On information and belief, the ROSETA team continue to use the MMAS-
11 8 after they terminated their license in 2022.

12 41. On information and belief, the ROSETA team claim to have stopped use
13 of the MMAS-8 as the key validation paper has been withdrawn did not apply to the
14 Morisky Widget MMAS-8 but to a 2008 validation article with a different MMAS-8
15 scoring and coding criteria than the Morisky Widget MMAS-8.

16 42. On information and belief, in Accused Study 2, the ROSETA team
17 reported data was unavailable for the MMAS-8 tests administered to breast cancer
18 patients in the ROSETA study. On information and belief, Plaintiff alleges that
19 University College London and MMAS Research LLC executed a Perpetual Global
20 Morisky Widget License for University College London on May 14, 2017.

21 43. On information and belief, the University College London fully
22 understood and agreed that the Morisky Widget software, the Morisky Medication
23 Adherence Scales, the MMAS-8, the MMAS-4, and all MMAS translations are the
24 exclusive property of Plaintiff and can't be divulged or distributed without the written
25 permission of the Licensor.

26 44. On information and belief, the University College London understood and
27 agreed that the Morisky Widget license is non-transferable outside of the University
28 College London, but can be used by any University College London student, faculty, or

1  staff member with the proper Morisky Widget training and certification and purchase
2  of prepaid MMAS tests.

3     45.    On information and belief, University College London understood and agreed that Coding and scoring criteria of the MMAS are trade secrets of Plaintiff and as such can never be divulged in any publication, presentation, or website without written permission. If University College London divulges Morisky Widget scoring and coding criteria it will be considered a breach of the Morisky Widget license and MMAS will have the right to suspend or terminate the Agreement.

     46.    MMAS Research traveled to London in May 2018 and trained and certified University College London pharmacists on the use of the Morisky Widget trade secret scoring and coding algorithms.

     47.    On information and belief, University College London understood and agreed that in case of scientific, administrative, or intellectual property misconduct in using the Morisky Widget, the Morisky name or MMAS-4 and MMAS-8, Plaintiff reserves the right to withdraw permission for use and to pursue all legal remedies

     48.    On information and belief, University College London understood and agreed that Los Angeles County, California State, and United States Federal Courts have jurisdiction, authority, and is the proper venue for any breach of the license contract.

     49.    On information and belief, the University College London understood and agreed that they must submit to MMAS Research all manuscripts that are being considered for publication to make certain that all copyright and trademark requirements are included in all manuscripts submitted for publication.

     50.    On information and belief, five University of London faculty members and researchers published an article on the Diverge Study in October 2024 entitled GENETICS OF TREATMENT RESISTANT DEPRESSION IN PAKISTAN; UPDATE FROM THE DIVERGE STUDY.

https://www.sciencedirect.com/science/article/abs/pii/S0924977X24005790


51. On information and belief, DIVERGE is a case-control study of major depressive disorder (MDD) with recruitment at 32 public and private hospitals/clinics across Pakistan since 2021. Treatment resentment depression was defined as minimal to no symptom relief after antidepressant treatment lasting at least 12 weeks and with <u>evidence of good/moderate medication adherence measured by MMAS-4</u>.

52. On information and belief, the DIVERGE investigators included co-authors from the University of Peshawar and the Institute of Omics and Health Research (Shifa International Hospitals) who were not licensed or trained and certified on the use of MMAS-4.

53. On September 8, 2020, Defendant Michigan State University and Plaintiff executed a perpetual Morisky Widget License.

54. In March 2021, MMAS Research trained and certified Michigan State University clinicians on the use of Morisky Widget.

55. On information and belief, Defendant Michigan State University acknowledged and agreed in their Morisky Widget License that the MMAS Research Widget Software, United States Copyright Registration TX8816577, are the exclusive property of the Licensor and cannot be used, transferred, divulged, distributed, published, or otherwise exploited without the written permission of the Plaintiff.

56. On information and belief, Defendant Michigan State University fully understands and agrees, pursuant to this License Agreement, the © MMAS Widget Software can only be used by MSU faculty, staff, or students who have been trained and certified by the Licensor (or his designee) on the MMAS Research Widget Software.

57. On information and belief, Defendant Michigan State University acknowledges and agrees in their Morisky Widget License that after the training and certification, Licensor will provide the specific MSU department(s) with their own secure respective Morisky Widgets. Each MSU department gets its own Widget following training and certification.

58. On information and belief, Defendant Michigan State University acknowledges and agrees in their Morisky Widget License that Licensor's MMAS Widget Software Coding and Scoring criteria are trade secrets of Licensor and, as such, Licensee is forbidden from publicizing MMAS Coding and Scoring criteria in any form without the expressed, written consent from Licensor.

59. On information and belief, Defendant Michigan State University acknowledges and agrees in their Morisky Widget License that all MMAS Widget Software tests must be scored and coded, without exception, through the Morisky Widget Software

60. On information and belief, Defendant Michigan State University acknowledges and agrees in their Morisky Widget License that matters connected with the performance thereof shall be construed, interpreted, applied, and governed in all respects in accordance with the laws of California and the United States. The Parties agree: (a) that all disputes and litigation regarding this Agreement, its construction and matters connected with its performance shall be subject to the jurisdiction of the Courts of Los Angeles California.

61. On information and belief, Adesuwa Olomu, Michigan State University (Responsible Party) published trade secrets MMAS Coding and Scoring criteria without the expressed, written consent of Plaintiff on the National Institutes of Health ClinicalTrials.Gov website. Accessed May 20, 2025, at
https://clinicaltrials.gov/study/NCT04874116?tab=history&a=1#version-content-panel

62. On information and belief, Defendant Adesuwa Olomu wrote Morisky Scale (MMAS-8). Four Yes-No items and each is scored as 1 or 2 to create a composite measure that ranges from 4 to 8 points. Higher scores indicate better adherence.

63. Michigan State University lawyer, Zachary Behler wrote Plaintiff's attorney on August 30, 2021, that he talked this over with the MSU PIs involved and we have decided that a self-report measure of medication-taking behavior is not necessary for this study. Therefore, MSU won't be using the MMAS-8 scale at all on

this project. If the University thinks that use of MMAS-8 would be useful on a future project, we will reach out.

64. On information and belief, Defendants Michigan State University and Adesuwa Olomu never removed the trade secret Morisky Widget scoring and coding criteria from the National Institutes of Health ClinicalTrials.Gov website and it remains accessible today for anyone with access to the internet.

65. On information and belief, Defendants Michigan State University and Betsi Cadwaladr University published MMAS-8 study results in a 2024 article entitled The Patterns of Non-adherence to Medication in the Management of Cardiovascular Disease: A Descriptive Study.

https://pmc.ncbi.nlm.nih.gov/articles/PMC11491134/

66. On information and belief, Defendants Michigan State University and Betsi Cadwaladr University did not give any copyright notification or permissions in the article.

67. On information and belief, Defendants Michigan State University, and Betsi Cadwaladr University wrote in the article they measured adherence using the eight-point Morisky Medication Adherence Scale (MMAS). The first seven items were yes/no responses, while the last included questions based on medication-taking behaviors. Based on the summated scores from the MMAS-8 ranging from 0 to 8, the scoring criteria of the scale and cut-points are predetermined, and adherence levels were categorized as high (=8 points), medium (6 or 7 points), and low (<6 points).

68. On information and belief, Defendants Michigan State University and Betsi Cadwaladr University a used a counterfeit MMAS-8 scoring and coding criteria that was scientifically incorrect and would have invalidated the MMAS-8 results and put heart patients at risk of adverse medical events or even death, due to a misdiagnosis of their medication adherence.

69. On information and belief, Defendants Michigan State University and Betsi Cadwaladr University violated the Defend Trade Secrets Act by publishing trade

secret MMAS-8 scoring criteria.



70. On information and belief, in June 2024, the East and North Hertfordshire NHS Trust used MMAS-8 without license on 40 cancer patients receiving oral cancer treatment across two clinical locations within <u>its four main hospitals</u>.

71. On information and belief, the East and North Hertfordshire NHS Trust published on the internet, "Audit on Oral Systemic Anti-Cancer Therapies (SACT) Adherence Using the Morisky Medication Adherence Scale (MMAS)"

72. On information and belief, the East and North Hertfordshire NHS Trust wrote, *Patients scoring 8 points on MMAS-8 were considered to have high adherence,* **<u>6-7 medium</u>** *and less than 6 were low*.

73. On information and belief the MMAS-8 scoring criteria used on the cancer patients was scientifically incorrect and would have invalidated the MMAS-8 results

and could have put the patients at risk of harm or even death.

74. On information and belief, the East and North Hertfordshire NHS Trust willfully infringed on the MMAS-8 copyright and violated the Defend Trade Secrets Act.

## CLAIMS FOR RELIEF
## FIRST CLAIM FOR RELIEF
## BREACH OF CONTRACT
### (As To Defendants University College London, Michigan State University, University of Leeds)

75. MMAS Research realleges each allegation contained in the preceding paragraphs.

76. This claim for relief for breach of contract is established by the prima facie elements of (1) existence of a valid contractual obligation, (2) performance by the plaintiff, (3) breach by the defendant, and (4) resulting damages to plaintiff.

77. A valid contractual obligation was established by the execution of a perpetual Morisky Widget license agreement between Defendant University College London and Plaintiff MMAS Research LLC which permitted use of the Morisky Widget MMAS assessments under specific conditions. These agreements constitute binding contracts under applicable law.

78. Defendant University College London breached its Morisky Widget license by not scoring and coding all MMAS tests through the Morisky Widget.

79. Defendant University College London breached its Morisky Widget license by transferring its license to the University of Peshawar and Institute of Omics and Health Research.

80. Defendant University College London breached its Morisky Widget license by providing MMAS translations to the to the University of Peshawar and Institute of Omics and Health Research.

81. Defendant University College London breached its Morisky Widget license by allowing clinicians and researchers from University of Peshawar and Institute of Omics and Health Research who were not trained and certified on the Morisky

Widget to administer, score, and report MMAS-8 tests.

82. Defendant University College London breached its Morisky Widget license by transferring MMAS-8 trade secret MMAS-8 scoring and coding criteria to the University of Peshawar and Institute of Omics and Health Research who were not trained and certified on the Morisky Widget to administer, score, and report MMAS-8 tests.

83. Defendant University College London breached its Morisky Widget license by failing to make certain that all copyright and trademark requirements are included in all manuscripts submitted for publication.

84. A valid contractual obligation was established by the execution of a perpetual Morisky Widget license agreement between Defendant Leeds and Plaintiff MMAS Research LLC which permitted the use of the Morisky Widget MMAS assessments under specific conditions. These agreements constitute binding contracts under applicable law.

85. Although Defendant Leeds terminated its Morisky Widget contract in November 2022, in a 2023 article, it misappropriated trade secret MMAS-8 scoring and coding criteria.

86. Defendant Leeds breached its terminated Morisky Widget license because Leeds was forbidden from publicizing Widget Coding and Scoring criteria in any form without the expressed, written consent from Plaintiff. Defendant Leeds further acknowledged and agreed that "the trade secrets provision shall survive the termination of this License Agreement".

87. A valid contractual obligation was established by the execution of a perpetual Morisky Widget license agreement between Defendant Michigan State University and Plaintiff MMAS Research LLC which permitted use of the Morisky Widget MMAS assessments under specific conditions. These agreements constitute binding contracts under applicable law.

88. Defendant Michigan State University breached its Morisky Widget

license by misappropriating trade secret MMAS-8 scoring and coding criteria on the National Institutes of Health ClinicalTrials.gov website. Defendant Michigan State University breached its Morisky Widget license by not scoring and coding MMAS tests administered after the execution of their Morisky Widget license through the Morisky Widget.

89. Defendant Michigan State University breached its Morisky Widget license by publishing trade secret MMAS-8 scoring criteria.

90. Defendant Michigan State University breached its Morisky Widget license by allowing Defendant Betsi Cadwaladr University to use the MMAS-8 without training and certification.

91. Defendant Michigan State University breached its valid contractual obligation that was established by the execution of a perpetual Morisky Widget license agreement between Defendant MSU and Plaintiff MMAS Research LLC which permitted the use of the Morisky Widget MMAS assessments under specific conditions. These agreements constitute binding contracts under applicable law.

## SECOND CLAIM FOR RELIEF
## COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. §§ 101, *ET SEQ.*
### (As To Defendants University of Leeds, University College London, Michigan State University Betsi Cadwaladr University, East and North Hertfordshire NHS Trust)

92. MMAS Research realleges each allegation contained in the preceding paragraphs.

93. At all times relevant hereto, MMAS Research was the owner of all copyright rights or rights to assert copyright claims for the Morisky Widget.

94. MMAS Research has complied in all respects with the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.*, and all other laws governing copyright.

95. By reason of the copyright infringements described below, Plaintiff is entitled to recover from Defendants statutory damages up to $150,000.00 per copyright infringed for Defendants' willful copyright infringement, plus attorneys' fees.

96. Defendants University of Leeds, University College London, Michigan

State University, Betsi Cadwaladr University and the East and North Hertfordshire NHS Trust willfully violated 17 U.S.C. §501, *et seq*.

97. MMAS Research is informed and believes and thereon alleges that the University of Leeds, without authorization, infringed the Morisky Widget copyright by exploiting the Morisky Widget MMAS-8 in the ROSETA Study after the University of Leeds terminated their Morisky Widget license.

98. The MMAS Research LLC granted University College London a limited-use license to use the copyrighted Morisky Widget MMAS tests ("Widget Tests") solely if they were scored and coded in the Morisky Widget by clinicians who were trained and certified on the Morisky Widget.

99. University College London administered, scored, coded, and reported MMAS-8 tests in the DIVERGE STUDY that were never scored and coded in the Morisky Widget.

100. MMAS Research is informed and believes and thereon alleges that University College London, without authorization, infringed the Morisky Widget copyrights by using, copying, counterfeiting, distributing, or otherwise exploiting the MMAS-8 tests.

101. Defendant University College London willfully committed no fewer than 2000 infringements of the MMAS Research Widget Code copyright in the DIVERSE STUDY.

102. Defendant Leeds violated 17 U.S.C. §501, *et seq*. by terminating its Morisky Widget license and continuing to administer score and code MMAS-8 tests.

103. Defendant Leeds willfully committed no fewer than 600 infringements of the Morisky Widget copyright in the ROSETA STUDY.

104. Defendants Michigan State University Betsi Cadwaladr University violated 17 U.S.C. §501, *et seq*.

105. Defendants Michigan State University Betsi Cadwaladr University willfully committed at least 200 infringements of the Morisky Widget copyright.

106. Defendant East and North Hertfordshire NHS Trust violated 17 U.S.C. §501, *et seq*.

107. Defendant East and North Hertfordshire NHS Trust willfully committed no fewer than 40 infringements of the Morisky Widget copyright.

108. By reason of the copyright infringements described above, Plaintiff is entitled to recover from Defendants statutory damages up to $150,000.00 per copyright infringed for Defendants' willful copyright infringement, plus attorneys' fees.

**THIRD CLAIM FOR RELIEF**
**TRADE SECRET MISAPPROPRIATION, DTSA**
**(As To Defendants University of Leeds, University College London, Michigan State University, Betsi Cadwaladr University, East and North Hertfordshire NHS Trust)**

109. MMAS Research realleges each allegation contained in the preceding paragraphs.

110. Plaintiff MMAS Research possesses and vigorously asserts trade secret rights in the MMAS Research Widget Code, including its proprietary scoring and coding algorithms. These trade secrets are highly valuable intellectual property assets, representing years of research and development. They are not generally known to others in the industry and provide MMAS Research with a significant competitive advantage. MMAS Research has consistently implemented robust measures to maintain the secrecy of this information, including but not limited to strict confidentiality agreements, limited access protocols, and secure storage systems.

111. Under the Defend Trade Secrets Act 18 U.S.C.S. § 1839(3), a trade secret consists of three elements: (1) information; (2) that is valuable because it is unknown to others; and (3) that the owner has attempted to keep it a secret.

112. The trade secrets include, but are not limited to, the specific MMAS-4 and MMAS-8 scoring and coding algorithms and test/translation editor algorithms of the MMAS Widget Code software designed to create MMAS condition and medication specific assessments in over 80 languages.

113. Defendants University of Leeds, University College London, Michigan

State University were trained and certified on the use of copyrighted trade secret Morisky Widget MMAS scoring and coding criteria and test editor translation algorithms. MMAS Research does not permit licensees to disclose MMAS, scoring and coding criteria, or share trade secret MMAS scoring and coding criteria. Yet, Defendants University of Leeds, University College London, Michigan State University misappropriated trade secret MMAS-8 specific scoring and coding and shared it with third parties.

114. Under the Defend Trade Secrets Act, a plaintiff must prove: (1) that the plaintiff possessed a trade secret; (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff. *Inteliclear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653 (9th Cir. 2020).

115. In their Morisky Widget Licenses, Defendants University of Leeds, University College London, and Michigan State University agreed not to use the Morisky Widget MMAS 8/4 software for any unauthorized use.

116. Defendants University of Leeds, University College London, Michigan State University, Betsi Cadwaladr University, East and North Hertfordshire NHS Trust misappropriated MMAS Research's confidential, proprietary, and trade secret information.

117. This misappropriation of MMAS Research's confidential, proprietary, and trade secret information was intentional, knowing, willful, and malicious.

118. As the direct and proximate result of Defendants' misconduct, MMAS Research has suffered and, if Defendants' conduct is not stopped, will continue to suffer severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial. Because MMAS Research's remedy at law is inadequate, MMAS Research seeks, in addition to damages, temporary, preliminary, and permanent injunctive relief to recover and protect their confidential, proprietary, and trade secret information and to protect other legitimate business interests.

119. Plaintiff MMAS Research has been damaged by the foregoing and is entitled

to an award of exemplary damages and attorney's fees.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court Enters Judgment in Plaintiff's favor and against Defendants as follows:

A. For actual damages in an amount according to proof at trial, and for any additional profits attributable to infringements of Plaintiff MMAS Research's copyright in the Morisky Widget, in accordance with proof at trial;

B. For statutory damages for copyright infringement and/or willful copyright infringement by Defendants;

C. For issuance of preliminary and permanent injunctive relief against Defendants, and each of them, and their respective officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with Defendants, enjoining and restraining them from: using the Widget Tests or the Morisky Widget copyrighted work until a license is obtained, including the maintenance on websites, posted on the Internet, or in any publication, articles, and reports described herein, or any such articles, publication, and reports in the future that use or reference the Widget Tests, MMAS-8, or the Morisky Widget;

D. Order that Defendants file with this Court and serve upon Plaintiff within thirty (30) days after service on Defendants of an injunction in this action, a report by Defendants, under oath, setting forth that Defendants have complied with the injunction, as well as the steps they have taken to comply;

E. For costs of suit incurred;

F. For attorneys' fees;

G. For prejudgment interest in the amount of ten percent (10%) per annum or the maximum amount allowed by law; and

H. For such other and further relief, the Court deems just and proper.

| | | |
|---|---|---|
| 1 | Dated: July 10, 2025 | Respectfully submitted, |
| 2 | | **HANKIN PATENT LAW, APC** |
| 3 | | /*Marc E. Hankin*/ |
| | | Marc E. Hankin, Esq. |
| 4 | | Attorneys for Plaintiff, |
| 5 | | MMAS RESEARCH LLC |

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all claims and issues so triable.

| | | |
|---|---|---|
| Dated: July 10, 2025 | | Respectfully submitted, |
| | | **HANKIN PATENT LAW, APC** |
| | | /*Marc E. Hankin*/ |
| | | Marc E. Hankin, Esq. |
| | | Attorneys for Plaintiff, |
| | | MMAS RESEARCH LLC |