Mark D. Kachner (SBN 234,192)
2mdk@knobbe.com
Matthew J. Petersen (SBN 347,095)
2map@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park East, Suite 400
Los Angeles, CA 90067
Phone: (310) 551-3450
Facsimile: (310) 601-1263


*Attorneys for Defendant*
*University College London*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MMAS RESEARCH LLC, a Washington limited liability company, | Civil Action No. 2:25-cv-6314-WLH-E |
| | Hon. Wesley L. Hsu |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNIVERSITY COLLEGE LONDON'S MOTION TO DISMISS THE COMPLAINT** |
| v. | |
| UNIVERSITY OF LEEDS; UNIVERSITY COLLEGE LONDON; MICHIGAN STATE UNIVERSITY; BETSI CADWALADR UNIVERSITY HEALTH BOARD; EAST AND NORTH HERTFORDSHIRE NHS TRUST; Does 1 through 10, inclusive, | Date:        January 9, 2026<br>Time:        1:30 p.m.<br>Location:    Courtroom 9B |
| Defendants. | |

# TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTION..................................................................................1

II.   BACKGROUND...................................................................................2

III.  LEGAL STANDARDS..........................................................................3

    A.    Failure to State a Claim.................................................................3

    B.    Subject Matter Jurisdiction...........................................................4

    C.    Sanctions.......................................................................................4

IV.   ARGUMENT.........................................................................................5

    A.    MMAS Fails to State a Copyright Claim......................................5

        1.    The Morisky Widget is Not Copyrightable Subject Matter.............................................................................5

        2.    The Court Lacks Subject Matter Jurisdiction Because the Alleged Copyright Infringement Occurred Outside of the United States.................................7

        3.    MMAS Fails to Plead that UCL Copied or Reproduced the Morisky Widget Code..............................8

    B.    MMAS Fails to State a Claim for Trade Secret Misappropriation............................................................................9

    C.    MMAS's Contract Claim Fails as a Matter of Law.....................12

        1.    Copyright Law Preempts MMAS's Breach Allegations................................................................................13

        2.    The Court Should Dismiss MMAS's Breach Allegation that is Untethered From the Contract..............13

        3.    The Court Should Refuse Supplemental Jurisdiction Over MMAS's Contract Claim......................14

        4.    The Court Has No Diversity Jurisdiction Because MMAS Fails to Allege Facts Supporting an Amount in Controversy Above $75,000.............................15

    D.    Leave to Amend Would be Futile................................................16

    E.    The First-to-File Rule Bars MMAS's Copyright Claim..............16

# TABLE OF CONTENTS
### (*cont'd*)

**Page No.**

F.    The Court Should Exercise Its Discretion and Sanction MMAS .............................................................................................17

# TABLE OF AUTHORITIES

**Page No(s).**

*Acri v. Varian Assocs., Inc.*,
  114 F.3d 999 (9th Cir. 1997).................................................................14

*Adherence v. CVS Pharmacy, Inc.*,
  2025 WL 1798883 (D. Nev. June 25, 2025) .............................1, 6, 7

*Advanz Behav. Mgmt. Res., Inc. v. Miraflor*,
  21 F. Supp. 2d 1179 (C.D. Cal. 1998).................................................6

*Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.*,
  69 F.3d 381 (9th Cir. 1995).................................................................7

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
  946 F.2d 622 (9th Cir. 1991)............................................................17

*AlterG, Inc. v. Boost Treadmills LLC*,
  388 F. Supp. 3d 1133 (N.D. Cal. 2019) ............................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...........................................................................3

*Attia v. Google LLC*,
  983 F.3d 420 (9th Cir. 2020)...........................................................10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...........................................................................3

*Best Carpet Values, Inc. v. Google, LLC*,
  90 F.4th 962 (9th Cir. 2024) .............................................................5

*Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*,
  149 F. Supp. 3d 1167 (N.D. Cal. 2015) ............................................8

*Carnegie-Mellon Univ. v. Cohill*,
  484 U.S. 343 (1988) .........................................................................14

*CCC Info. Serv., Inc. v. Maclean Hunter Market Reps., Inc.*,
  44 F.3d 61 (2d Cir. 1994) ..................................................................5

*CJ Freshway Am. Corp. v. Meshquat Int'l Trading Co.*,
  2022 WL 16942831 (C.D. Cal. Sept. 2, 2022)................................14

*Eminence Cap., LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003).........................................................26

*EscapeX IP, LLC v. Google LLC*,
  --F.3d--, 2025 WL 3274847 (Fed. Cir. Nov. 25, 2025) ................18

1

2

**TABLE OF AUTHORITIES**
*(cont'd)*

3

**Page No(s).**

4

5

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991) ..................................................................8

6

*In re Ford Motor Co.*,
264 F.3d 952 (9th Cir. 2001)......................................................4

7

8

*G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*,
958 F.2d 896 (9th Cir. 1992) ...................................................13

9

*GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc.*,
2016 WL 11756835 (C.D. Cal. Oct. 19, 2016) .........................10

10

11

*Kabehie v. Zoland*,
102 Cal. App. 4th 513 (2002)...................................................13

12

13

*Kohn L. Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*,
787 F.3d 1237 (9th Cir. 2015)............................................16, 17

14

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) ..............................................................4, 7

15

16

*MMAS Rsch. LLC v. Charité*,
2023 WL 2379214 (C.D. Cal. Feb. 28, 2023).......................8, 18

17

*MMAS Rsch. LLC v. Johnson & Johnson Innovative Med.*,
2025 WL 2659226 (C.D. Cal. Aug. 25, 2025)..........................17

18

19

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015)....................................................3

20

21

*Moreland Apartments Assocs. v. LP Equity LLC*,
2019 WL 6771792 (N.D. Cal. Dec. 12, 2019) .........................10

22

*Moore v. Betit*,
511 F.2d 1004 (2d Cir.1975)....................................................15

23

24

*Nextdoor.Com, Inc. v. Abhyanker*,
2013 WL 3802526 (N.D. Cal. July 19, 2013)...........................12

25

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
678 F.2d 93 (9th Cir. 1982)......................................................17

26

27

*Rasidescu v. Midland Credit Mgmt., Inc.*,
435 F. Supp. 2d 1090 (S.D. Cal. 2006) ....................................15

28

# TABLE OF AUTHORITIES
### *(cont'd)*

**Page No(s).**

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.,*
442 F.3d 741 (9th Cir. 2006).................................................................12

*Righthaven LLC v. Hoehn,*
716 F.3d 1166 (9th Cir. 2013).........................................................9, 17

*Ruckelshaus v. Monsanto Co.,*
467 U.S. 986 (1984) .............................................................................10

*Rumble, Inc. v. Daily Mail & Gen. Tr. PLC,*
2020 WL 2510652 (C.D. Cal. Feb. 12, 2020)....................................13

*Schutts v. Bently Nev. Corp.,*
966 F. Supp. 1549 (D. Nev.1997) ........................................................4

*Siegler v. Sorrento Therapeutics, Inc.,*
2019 WL 3532294 (S.D. Cal. Aug. 2, 2019) .......................................5

*St. Paul Mercury Indem. Co. v. Red Cab Co.,*
303 U.S. 283 (1938) .............................................................................15

*Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.,*
24 F.3d 1088 (9th Cir. 1994)................................................................7

*Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.,*
830 Fed. App'x. 821 (9th Cir. 2020)....................................................4

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.,*
368 F.3d 1053 (9th Cir. 2004)............................................................16

*Townsend v. Holman Consulting Corp.,*
929 F.2d 1358 (9th Cir. 1990) (en banc)............................................4

*Truesdell v. S. Cal. Permanente Med. Grp.,*
209 F.R.D. 169 (C.D. Cal. 2002) .........................................................4

*Wagner Aeronautical, Inc. v. Dotzenroth,*
2022 WL 6837701 (S.D. Cal. Oct. 7, 2022)......................................10

*Zaldivar v. City of L.A.,*
780 F.2d 823 (9th Cir. 1986)................................................................4

# TABLE OF AUTHORITIES
## (*cont'd*)

**Page No(s).**

## OTHER AUTHORITIES

17 U.S.C. § 102 ..................................................................................................5

17 U.S.C. § 106 .............................................................................................8, 9

17 U.S.C. § 301 ................................................................................................13

18 U.S.C. § 1839 ..............................................................................................10

28 U.S.C. § 1332 ..............................................................................................15

28 U.S.C. § 1367 ..............................................................................................14

37 C.F.R. § 202.1 ...............................................................................................6

Fed. R. Civ. P. 11 ..................................................................................4, 17, 18

Fed. R. Civ. P. 12 ...............................................................................................1

Fed. R. Civ. Evid. 201 .....................................................................................12

Defendant University College London ("UCL") respectfully submits this Memorandum in support of its Motion to dismiss Plaintiff MMAS Research LLC's ("MMAS") First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) with prejudice.

## I.  INTRODUCTION

MMAS has filed dozens of lawsuits against more than 100 defendants asserting the same unenforceable intellectual property.  Nearly all of the defendants are distinguished research universities or corporations developing life-saving medicines.[1]  MMAS persists in this case, even though UCL warned MMAS of the legal defects in its claims months ago.

Here, MMAS accuses UCL of infringing the "Morisky Widget" copyright and misappropriating a "coding and scoring" trade secret, both of which relate to a medicine adherence test developed by third-party Dr. Donald Morisky.  MMAS also accuses UCL of breaching a 2017 settlement agreement related to the same asserted intellectual property.  But for numerous reasons, MMAS fails to state any claim against UCL.

MMAS's alleged copyright is invalid.  The asserted "Morisky Widget" covers computer code to administer and score a test developed by a third party. Another court already invalidated a copyright for the underlying test. *Adherence v. CVS Pharmacy, Inc.*, 2025 WL 1798883, at *4 (D. Nev. June 25, 2025).  The "Morisky Widget" is not separately copyrightable as computer code.  Moreover, MMAS does not allege any domestic act of copyright infringement.  Copyright law does not extend to extraterritorial acts.

MMAS's alleged trade secrets are not secret and are thus unenforceable. The alleged trade secret was repeatedly published starting in 1986.  MMAS cannot now claim this published information is protected as a trade secret.

---

[1] MMAS filed many similar lawsuits listed in the Kachner Declaration at ¶ 3.

-1-

MMAS's breach of contract claim is preempted by copyright law, because the contract and copyright claims depend on the same factual allegations. Further, MMAS's contract claim seeks to enforce a 2017 nuisance-value settlement agreement resolving prior allegations related to the same unenforceable copyright. MMAS cannot leverage the prior settlement to manufacture an independent contract claim.

UCL warned MMAS of each legal defect in its Complaint more than three months ago. MMAS nevertheless filed a First Amended Complaint maintaining all claims and correcting none of the defects. UCL should never have needed to file this motion. Sanctions are appropriate and would help deter MMAS from continuing to harass other leading research institutions by asserting the same invalid and unenforceable intellectual property.

## II.  BACKGROUND

MMAS alleges that it owns a copyright registration entitled "MMAS Research Widget Code" (Reg. No. TX0008816517), that MMAS calls the "Morisky Widget." MMAS alleges the Morisky Widget is computer code that is a "derivative" of third-party Dr. Donald Morisky's Morisky Medication Adherence Scales. FAC ¶¶ 17-20.[2] MMAS alleges the Scales are two paper tests designed to measure medication adherence, one consisting of four static questions ("MMAS-4") and another consisting of eight static questions ("MMAS-8"). FAC ¶ 32. The copyright registrations for the paper MMAS-4 test (Reg. No. TX0008285390) and MMAS-8 test (Reg. No. TX0008632533) tests are both owned by Dr. Morisky, not MMAS. MMAS explains that the Morisky Widget measures medication adherence, like the paper tests. FAC ¶¶ 35; 170.

MMAS accuses UCL of infringing the Morisky Widget by alleging that "five University College of London faculty members and researchers published

_____

[2] All references to FAC are to MMAS's First Amended Complaint, Dkt. 41.

an article" (the "Diverge Study") that defined "treatment resentment (sic) depression" as included "evidence of good/moderate medication adherence measured by MMAS-4." FAC ¶¶ 96, 98.

MMAS also alleges UCL breached a February 15, 2017 "License Agreement." FAC ¶ 89, 126-132; Dkt. 41-1, Ex. 21. In 2017, UCL and MMAS signed a nuisance value settlement to resolve MMAS's similar prior claims of infringement. Dkt. 41-1, Ex. 21. According to MMAS, this License Agreement granted UCL a license to use the Morisky Widget. FAC ¶ 126. MMAS alleges UCL breached "by not scoring and coding all MMAS tests through the Morisky Widget," and by sharing the Morisky Widget with third parties. FAC ¶¶ 127-131.

MMAS further accuses UCL of trade secret misappropriation. Specifically, MMAS alleges that UCL "divulge[ed] trade secret scoring and coding criteria of the MMAS-4," and "published" it. FAC ¶¶ 99-100. MMAS further alleges that UCL "transferr[ed]" this trade secret to third-party institutions involved in the Diverge Study. FAC ¶ 102.

### III. LEGAL STANDARDS

**A.    Failure to State a Claim**

A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015). For a claim to be facially plausible, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Dismissal is warranted where a complaint fails to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

**B.    Subject Matter Jurisdiction**

The plaintiff bears the burden of proving that its case is properly in federal court.  *In re Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001).  Courts presume lack of subject matter jurisdiction and the "burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  The Court lacks subject matter jurisdiction over copyright claims where all alleged infringing conduct occurred outside of the United States.  *Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*, 830 Fed. App'x. 821, 823-24 (9th Cir. 2020).

**C.    Sanctions**

Rule 11 deters attorneys "from violating their certification that any pleading, motion or other paper presented to the court is supported by an objectively reasonable legal and factual basis." *Truesdell v. S. Cal. Permanente Med. Grp.*, 209 F.R.D. 169, 173-74 (C.D. Cal. 2002).  When evaluating a sanctions request, courts consider "whether a reasonable attorney, having conducted an objectively reasonable inquiry into the facts and law, would have concluded that the offending paper was well-founded." *Schutts v. Bently Nev. Corp.*, 966 F. Supp. 1549, 1562 (D. Nev.1997) (citation omitted).  Sanctions are appropriate when the pleading is "frivolous," "legally unreasonable," or "without factual foundation, even though the paper was not filed in subjective bad faith." *See Zaldivar v. City of L.A.*, 780 F.2d 823, 831 (9th Cir. 1986), *overruled on other grounds by Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990); *see also Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc).

# IV.  ARGUMENT

## A.    MMAS Fails to State a Copyright Claim

### 1.    The Morisky Widget is Not Copyrightable Subject Matter

MMAS alleges it owns a copyright registration entitled "MMAS Research Widget Code" (Reg. No. TX0008816517), that MMAS calls the "Morisky Widget."   MMAS concedes the Morisky Widget is a computer "algorithm" version and "derivative" of two paper tests and scoring criteria owned by third-party Dr. Morisky.  FAC ¶¶ 17-20, 170.  The paper tests are called MMAS-4 and MMAS-8, and include four and eight questions, respectively, to evaluate medication adherence.  FAC ¶¶ 30-32.  MMAS alleges that the Morisky Widget includes "MMAS-4 and MMAS-8 scoring and coding algorithms" and "test/translation editor algorithms."  FAC ¶¶ 33-34, 170.

The Copyright Act extends no copyright protection to functional aspects of algorithms. The Copyright Act states: "In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."   17 U.S.C. § 102(b).   Courts thus deny copyright protection for "mathematical principles," "technical methods," "formulas," and "algorithms."  *Siegler v. Sorrento Therapeutics, Inc.*, 2019 WL 3532294, at *10 (S.D. Cal. Aug. 2, 2019) (citing *CCC Info. Serv., Inc. v. Maclean Hunter Market Reps., Inc.*, 44 F.3d 61, 73 (2d Cir. 1994)).  Copyright protection does not extend to "functional aspects of a computer program…algorithms, formatting, functions, logic, or system design."  Copyright Circular 61; *see Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962, 971 (9th Cir. 2024) (explaining that copyright protects only expressive elements of software, such as literal code, the user interface, and the user experience).

The District of Nevada applied this principle to invalidate Dr. Morisky's

copyrights for the MMAS-4/8 tests and scoring criteria. *Adherence*, 2025 WL 1798883, at *4. Dr. Morisky—through his corporate entity called Adherence—had accused CVS Health of infringing the MMAS-4 and MMAS-8 copyrights. The court dismissed, finding that the MMAS-4/8 tests and scoring criteria are not subject to copyright protection. The tests are merely "blank forms" that "are primarily designed to record information, and the accompanying text simply provides instruction to assist in completing the form." *Adherence*, 2025 WL 1798883, at *1, 4; *see* 37 C.F.R. § 202.1(c) ("Blank forms, such as time cards, graph paper, account books, diaries, bank checks, scorecards, address books, report forms, order forms and the like, which are designed for recording information and do not in themselves convey information" not subject to copyright). MMAS-4/8's "scoring algorithms" are also not protectable. *Adherence*, 2025 WL 1798883, at *2–3. An "algorithm, even if useful in application, constitutes a method or system, and the forms used to implement it are functional tools for data collection, not original expression entitled to copyright protection." *Id.* at *3 ("a system or art of practical utility cannot be copyrighted, no matter what the manner of its representation") (*quoting Advanz Behav. Mgmt. Res., Inc. v. Miraflor*, 21 F. Supp. 2d 1179, 1184 (C.D. Cal. 1998)).

Because MMAS-4/8 tests and scoring criteria are not copyrightable, the Morisky Widget is also not subject to copyright protection. The Morisky Widget is merely a computer code version of the "MMAS-4 and MMAS-8 scoring and coding algorithms." FAC ¶ 170. As MMAS admitted, the Morisky Widget simply contains an algorithm that scores the MMAS-4 and MMAS-8 tests. FAC ¶¶ 33, 170. MMAS' description of the Morisky Widget matches the *Adherence* court's description of MMAS-4 and MMAS-8. *Compare id.* ("The Morisky Widget MMAS-8/4 were four and eight dynamic medication and condition specific questions, which produced three scores, one for raw adherence, one for intentional non-adherence and one for unintentional non-adherence.") *with*

-6-

*Adherence*, 2025 WL 1798883, at *1 (MMAS-4/8 "are designed to assess a patient's likelihood of adhering to prescribed medication regimens and form the core of the Morisky Medication Adherence Protocol" algorithm).  Because the Morisky Widget is merely a computer code version of MMAS-4/8 and scoring criteria, the Morisky Widget is not copyrightable.

Prior to filing this motion, UCL warned MMAS about this fatal defect. Kachner Decl., Ex. 2 at 2.  MMAS cannot reasonably allege a copyright claim here.

**2.  The Court Lacks Subject Matter Jurisdiction Because the Alleged Copyright Infringement Occurred Outside of the United States**

MMAS's copyright claim must also be dismissed because UCL's purported infringement occurred entirely outside of the United States.  The Ninth Circuit has long recognized that "the United States copyright laws do not reach acts of infringement that take place entirely abroad." *Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1098 (9th Cir. 1994).  In order for United States copyright law to apply, "at least one alleged infringement must be completed entirely within the United States." *Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.*, 69 F.3d 381, 387 (9th Cir. 1995).

In its Amended Complaint, MMAS alleged that UCL and its researchers infringed the Morisky Widget and the MMAS-4 copyrights by creating the Diverge Study.  FAC ¶ 98, 148, 153-154.  MMAS alleges the Diverge Study was conducted in Pakistan.  FAC ¶ 98; *see* Ex. 1.  MMAS alleges no conduct by UCL taking place in the United States.  As a result, MMAS failed to meet its burden of establishing subject matter jurisdiction.  *Kokkonen*, 511 U.S. at 377.

To the extent MMAS alleges UCL infringed the Morisky Widget by publishing the Diverge Study, this allegation also fails to establish subject matter jurisdiction.  MMAS alleges UCL published the Diverge Study in the Journal of

European Neuropsychopharmacology and on the ScienceDirect website. FAC
¶ 96, 100.  But the publications do not contain a single line of the Morisky
Widget's source code.  Ex. 1.  MMAS does not allege otherwise.  Because UCL's
publication did not reproduce the Morisky Widget's code (even if that code were
copyrightable), such publication could not establish infringement.  *MMAS Rsch.
LLC v. Charité*, 2023 WL 2379214, at *5-6 (C.D. Cal. Feb. 28, 2023), *aff'd* 2024
WL 1086873 (9th Cir. Mar. 13, 2024).  To the extent the Diverge Study published
facts or conclusions drawn from the use of the Widget, these facts and conclusions
could not infringe any copyright on the Widget.  *See id*.

Prior to filing this motion, UCL warned MMAS about this fatal defect.
Kachner Decl., ¶ 2, Ex. 2.  MMAS has had a prior case dismissed based on the
same fatal defect.  *Charité*, 2023 WL 2379214, at *6.  MMAS cannot reasonably
allege a copyright claim here.

### 3.    MMAS Fails to Plead that UCL Copied or Reproduced the Morisky Widget Code

Even if the Morisky Widget were somehow protectable, and even if UCL
had committed any alleged act in the United States, MMAS's claim still fails to
plead infringement.  MMAS never alleges UCL committed any act that could
constitute copyright infringement.

To state a claim for copyright infringement MMAS must plausibly allege,
*inter alia*, that UCL "cop[ied] constituent parts of the work that are original."
*Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*, 149 F. Supp. 3d 1167, 1172
(N.D. Cal. 2015) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340,
361 (1991)).  The Copyright Act provides exclusive rights to copyright holders to
reproduce, prepare derivative works of, distribute, perform, or display the
copyrighted work.  17 U.S.C. § 106.

MMAS alleges that UCL infringed by using MMAS-4 tests when it
published the Diverge Study.  *Compare* FAC ¶ 98 *with* FAC ¶¶ 148, 153-154.

But MMAS never alleges the Diverge Study copied constituent parts of the Morisky Widget Code.

MMAS also alleges UCL "administered, scored, coded, and reported MMAS-4 tests in the [Diverge Study] that *were never scored and coded in the Morisky Widget.*" FAC ¶ 154. This allegation also fails to state a claim. First, as discussed above, MMAS has no copyright protection in the functional aspects of the Morisky Widget. Second, MMAS concedes UCL ***did not*** use the Morisky Widget to score or code the tests included in the Diverge study. *Id*. And MMAS does not allege UCL used the Morisky Widget for any other test. Finally, to the extent that MMAS alleges UCL infringed a copyright on MMAS-4—the test underlying the Morisky Widget—MMAS lacks standing. Before the District of Nevada invalidated the MMAS-4 copyright, that court held that copyright registration is owned by third-party Dr. Morisky, not MMAS. *MMAS Rsch., LLC v. The Charité*, No. 2:21-cv-01406, Dkt. 47 at 6-8 (C.D. Cal. Nov. 4, 2022) (Ex. 12), *aff'd* 2024 WL 1086873, at *1 (9th Cir. Mar. 13, 2024) (reversing only as to ownership of the Morisky Widget). MMAS thus lacks standing to assert UCL infringed the MMAS-4 copyright. *See Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1169 (9th Cir. 2013) ("[O]nly the legal or beneficial owner of an exclusive right under a copyright has standing to sue for infringement[.]")

Accordingly, MMAS failed to plausibly plead copyright infringement and the court should dismiss MMAS's copyright claim with prejudice.

**B.     MMAS Fails to State a Claim for Trade Secret Misappropriation**

MMAS alleges UCL misappropriated its trade secrets under the Defend Trade Secrets Act ("DTSA"). Complaint, Third Claim for Relief ("Trade Secret Misappropriation, DTSA"); FAC ¶ 169. To state a claim under DTSA, a plaintiff must allege that: "(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1144

1    (N.D. Cal. 2019*)*.    Under the DTSA, a trade secret must "derive[] independent
2    economic value, actual or potential, from not being generally known to, and not
3    being readily ascertainable through proper means by, another person who can
4    obtain economic value from the disclosure or use of the information."  18 U.S.C.
5    § 1839(3)); *see Attia v. Google LLC*, 983 F.3d 420, 424 (9th Cir. 2020).

6         MMAS fails to show it owned a trade secret.  "If an individual discloses
7    his trade secret to others who are under no obligation to protect the confidentiality
8    of the information, or otherwise publicly discloses the secret, his property right is
9    extinguished."  *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984); *see*
10   *Attia*, 983 F.3d at 425 (trade secret extinguished by publishing in patent
11   application); *GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc.*,
12   2016 WL 11756835, at *11 (C.D. Cal. Oct. 19, 2016) (owner of trade secrets
13   ended its rights by disclosing them to others without a confidentiality agreement);
14   *Wagner Aeronautical, Inc. v. Dotzenroth*, 2022 WL 6837701, at *5 (S.D. Cal.
15   Oct. 7, 2022) (disclosure of trade secrets with no "indicia of secrecy on the
16   documents suggests that the information was not truly secret.").  Publicly filing
17   purported trade secrets in a court pleading terminates any trade secret rights to the
18   disclosed information.  *Moreland Apartments Assocs. v. LP Equity LLC*, 2019
19   WL 6771792, at *4 (N.D. Cal. Dec. 12, 2019) ("because the [trade secrets] can
20   be accessed on publicly available databases … the public docket for this case, and
21   databases like LexisNexis … [the information] are not protectable trade secrets.")

22        MMAS claims trade secret rights to "MMAS-4 scoring and coding
23   criteria." FAC ¶¶ 99, 102, 166.  But Dr. Morisky, MMAS's cofounder and creator
24   of MMAS-4, published MMAS-4 and the scoring and coding criteria in 1986.
25   Kachner Decl., Ex. 10 at 69 ("Scoring: high-low, yes = 0, no = 1").  The MMAS-
26   4 scoring and coding criteria were published again in 2019 on the National
27   Library of Medicine website.  Ex. 4 (Ex. D to AbbVie Complaint).  That website
28   is still active and continues to disclose the MMAS-4 scoring and coding criteria:

-10-

| Outcome Measure | Measure Description |
|---|---|
| Change in Morisky Medication Adherence Scale (MMAS) Scores From Month 3 to Month 12 | The MMAS is a 4-item self-reported measure of medication-taking behavior. It measures intentional and non-intentional non-adherence (based on forgetting, carelessness, stopping medication when feeling better, or stopping medication when feeling worse). The MMAS consists of 4 questions which can be answered with yes (0) and no (1). The MMAS score is the sum of all four questions and ranges from 0 (non-adherent) to 4 (adherent). |

Kachner Decl., Ex. 13 (https://clinicaltrials.gov/study/NCT01768858).  MMAS itself has published the MMAS-4 scoring and coding criteria in litigation filings. *MMAS Research LLC v. AbbVie KTF*, 2:21-cv-06315, Dkt. 1 (C.D. Cal. Aug. 5, 2021) (Exs. 3, 4).  MMAS admitted that Exhibit D to its AbbVie Complaint disclosed "MMAS-4 coding and scoring criteria."  Kachner Decl., Ex. 3 (AbbVie Complaint) at ¶¶ 54, 59.  MMAS identified "MMAS-4 coding and scoring criteria," exactly as it appears on the National Library of Medicine website:

**Morisky Medication Adherence Scale (MMAS)**
The MMAS is a 4-item Self-Report Measure of Medication-Taking Behavior. It measures both intentional and non-intentional non-adherence (based on forgetting, carelessness, stopping medication when feeling better, or stopping medication when feeling worse). The 4-item MMAS-4-item consists of 4 questions which can be answered with yes (=0 point) and no (=1 point). The MMAS score is the sum of all four question and range from 0 (=non-adherent) to 4 (=adherent).

Kachner Decl., Ex. 4 (Ex. D to AbbVie Complaint).

MMAS disclosed the same information in numerous public filings across the country.  Kachner Decl., Ex. 5 (Duke Complaint) at ¶¶ 138, 122-126; Ex. 6 (Dana Farber Complaint) at ¶¶ 21-23; Ex. 9 (UMass Complaint) at ¶ 93-95; 97-99.  MMAS's public filings also regularly identify articles that MMAS alleges publicly disclose its alleged trade secrets.  Kachner Decl., Ex. 3 (AbbVie Complaint) at ¶¶48-49; Ex. 5 (Duke Complaint) at ¶ 136 (referencing Ex. Q (included here at Kachner Ex. 8)); ¶ 122 (referencing Ex. O (included here at

1  Kachner Ex. 7)); Ex. 6 (Dana Farber Complaint) at ¶¶ 21-23 (referencing publicly
2  available Pallas Study); Ex. 9 (UMass Complaint) at ¶ 91 (referencing publicly
3  available UMass/Carrera Study).   MMAS's widespread disclosure of the
4  information it contends is trade secret destroys any trade secret right in that
5  information.

6  The Court should take judicial notice of MMAS's public filings that
7  contradict MMAS's allegation that the information is a secret.  *See e.g.*, FAC
8  ¶ 166.  Courts routinely take judicial notice of facts that "can be accurately and
9  readily determined from sources whose accuracy cannot reasonably be
10  questioned."  Fed. R. Evid. 201(b); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
11  442 F.3d 741, 746, n.6 (9th Cir. 2006) (judicially noticing court filing);
12  *Nextdoor.Com, Inc. v. Abhyanker*, 2013 WL 3802526, at *7 n.6 (N.D. Cal. July
13  19, 2013) (judicially noticing patent application disclosing alleged trade secret to
14  dismiss trade secret claim).

15  MMAS's numerous public filings also contradict its allegations that it
16  "consistently implemented robust measures to maintain the secrecy of" MMAS-
17  4 scoring and coding criteria.  *See* FAC ¶ 166.  MMAS's public filings—and
18  Morisky's public disclosure dating back to 1986—also contradict MMAS's
19  allegation that the trade secrets "are not generally known to others," and that they
20  provide MMAS "with a significant competitive advantage."  *Id*.   By
21  systematically disclosing its trade secrets, MMAS cannot establish that the
22  MMAS-4 scoring and coding criteria is secret or valuable by virtue of its secrecy.

23  Prior to filing this motion, UCL warned MMAS about this fatal defect.
24  Kachner Decl., Ex. 2 at 2.  MMAS cannot reasonably allege it owns a trade secret.

25  **C.**   **MMAS's Contract Claim Fails as a Matter of Law**

26  MMAS's First Amended Complaint accuses UCL of various breaches of
27  the MMAS-8 Retroactive Corrective License agreement ("License Agreement").
28  FAC ¶¶ 127-132.  Each breach allegation is based on the same factual allegations

-12-

underlying MMAS's copyright claim.  And copyright law preempts state law claims based on the same factual allegations.  In addition, certain breach allegations also fail as a matter of law because MMAS identifies no contractual obligation breached by UCL.  Further, because MMAS's federal copyright and trade secret claims fail as a matter of law, to the extent MMAS has any breach claim remaining, the Court should decline to extend supplemental or diversity jurisdiction.

### 1.    Copyright Law Preempts MMAS's Breach Allegations

"Copyright preemption is both explicit and broad: 17 U.S.C. § 301(a) prohibits state-law protection for any right equivalent to those in the Copyright Act." *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 904 (9th Cir. 1992).  All MMAS allegations of breach relate to UCL's purported copyright infringement concerning the Morisky Widget and MMAS-4. *See* FAC ¶¶ 127-132.  Indeed, each MMAS breach allegation accuses UCL of improperly using the Morisky Widget or MMAS-4. *Id.*  MMAS's breach of contract claim thus seeks to enforce MMAS's purported copyrights.  The breach of contract claim is thus preempted by the Copyright Act. *Rumble, Inc. v. Daily Mail & Gen. Tr. PLC*, 2020 WL 2510652, at *4 (C.D. Cal. Feb. 12, 2020); *see Kabehie v. Zoland*, 102 Cal. App. 4th 513, 526 (2002) ("The promise not to infringe adds nothing to a breach of contract action for copyright infringement. A breach of contract action based on this type of promise must be preempted in order to prevent parties from circumventing federal copyright law and nullifying the preemption provided for in [17 United States Code] section 301.") The Court should dismiss MMAS's breach of contract claim because it is preempted by the Copyright Statute.

### 2.    The Court Should Dismiss MMAS's Breach Allegation that is Untethered From the Contract

MMAS alleges that UCL breached the License Agreement by "not scoring

and coding all MMAS tests through the Morisky Widget." FAC ¶ 127. But UCL has no obligation under the License Agreement to score and code all MMAS tests through the Morisky Widget. MMAS identifies no provision of the License Agreement that UCL allegedly breached. MMAS cannot state a claim for breach of contract, where the contract itself does not require UCL to take the accused action. *CJ Freshway Am. Corp. v. Meshquat Int'l Trading Co.*, 2022 WL 16942831, at *2 (C.D. Cal. Sept. 2, 2022) (dismissing contract claim where the claimant did not identify term allegedly breached). Accordingly, the Court should dismiss MMAS's breach of contract claim based on alleged actions UCL was never obligated to take.

### 3.   The Court Should Refuse Supplemental Jurisdiction Over MMAS's Contract Claim

To the extent the Court determines MMAS has any valid contract claim, the Court should decline to exercise supplemental jurisdiction over the single state law claim. 28 U.S.C. § 1367(c)(3) (district courts may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction.") "The Supreme Court has stated, and [the Ninth Circuit] ha[s] often repeated, that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Indeed, this district previously refused supplemental jurisdiction over MMAS's contract claims against a third party, after dismissing MMAS's federal claims. *MMAS Rsch. LLC v. The Charité*, No. 2:21-cv-01406, Dkt. 47 at 12-13 (C.D. Cal. Nov. 4, 2022).

Here, MMAS alleges the Court has federal question jurisdiction over its copyright and DTSA claims, and "supplemental jurisdiction over [its] state law claims under 28 U.S.C. § 1367." FAC ¶¶ 1-2. Because the copyright and trade

-14-

secret claims fail as a matter of law for all the reasons discussed above, *see supra* Secs. IV.A-B, the Court should decline supplemental jurisdiction over any remaining state law breach of contract claim and dismiss the case in its entirety.

### 4. The Court Has No Diversity Jurisdiction Because MMAS Fails to Allege Facts Supporting an Amount in Controversy Above $75,000

The Court should also dismiss MMAS's complaint because it failed to establish diversity jurisdiction over its contract claim. MMAS pleads diversity jurisdiction under 28 U.S.C. § 1332 because "the amount in controversy exceeds $75,000.00." FAC ¶¶ 3 However, "[i]t is plaintiff's burden both to allege with sufficient particularity the facts creating jurisdiction, in view of the nature of the right asserted, and if appropriately challenged, or if inquiry be made by the court of its own motion, to support the allegation." *Rasidescu v. Midland Credit Mgmt., Inc.*, 435 F. Supp. 2d 1090, 1095 (S.D. Cal. 2006) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 n.10 (1938)). If "from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the [jurisdictional amount] claimed" then the suit must be dismissed. *Id.*

In *Rasidescu,* the court found no diversity jurisdiction because the plaintiff failed to explain its damages claim or connect damages to the allegations of the complaint. 435 F. Supp. 2d 1090, 1095. Because "[p]laintiff's claims cannot 'be ascertained pursuant to some realistic formula,'" they appeared to a legal certainty to be for less than the jurisdictional amount of $75,000. *Id.* at 1097 (quoting *Moore v. Betit*, 511 F.2d 1004, 1006 (2d Cir.1975)).

Here, MMAS alleges that UCL breached a license agreement, where UCL paid a nuisance amount for certain purported copyright and trade secret rights. *See* Dkt. 41-1, Ex. 21. MMAS alleges no fact that its breach of contract damage exceeds $75,000. MMAS alleges no fact identifying any particular type of damage caused by the alleged breach of contract. And MMAS's Prayer for Relief

1    does not identify a damages amount for its breach of contract claim. FAC at 33-
2    34.  Because MMAS pleads no particular harm or damages, and makes no attempt
3    to plead how any harm exceeds $75,000, MMAS fails to plead diversity
4    jurisdiction.

**D.    Leave to Amend Would be Futile**

6        The Court should dismiss MMAS's case against UCL with prejudice
7    because any amendment would be futile.  *See Thinket Ink Info. Res., Inc. v. Sun*
8    *Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004).  Leave to amend is futile
9    if "it is clear … that the complaint [can]not be saved by any amendment." *Id.*
10   (citing *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)).

11       The Morisky Widget is not subject to copyright protection as a matter of
12   law.  *See supra* Sec. IV.A.  No amended factual allegation could possibly convert
13   the nature of MMAS's copyright into protectable subject matter.

14       MMAS also publicly disclosed the alleged trade secret—MMAS-4 scoring
15   and coding criteria.  *See supra* Sec. IV.B.  No amended factual allegation could
16   possibly cure MMAS's public disclosure and convert MMAS-4 scoring and
17   coding criteria into a trade secret.

18       Finally, no amended factual allegation will justify the Court extending
19   supplemental or diversity jurisdiction over any possible remaining contract claim.

**E.    The First-to-File Rule Bars MMAS's Copyright Claim**

21       For all the reasons stated above, the Court should dismiss MMAS's claims
22   with prejudice.  But, to the extent the Court determines MMAS might have any
23   protectible copyright, the Court should still dismiss that claim under the first-to-
24   file rule.  A different lawsuit will soon determine whether or not MMAS owns
25   the Morisky Widget copyright.

26       The first-to-file rule allows a district court to stay or dismiss proceedings
27   "if a similar case with substantially similar issues and parties was previously filed
28   in another district court." *Kohn L. Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787

F.3d 1237, 1239 (9th Cir. 2015); *see Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 97 (9th Cir. 1982) (affirming dismissal of substantially similar action).

The first-to-file rule is intended to "serve[ ] the purpose of promoting efficiency well and should not be disregarded lightly." *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991).  In determining whether to apply the first-to-file rule, the Court should analyze three factors: (1) chronology of the lawsuits, (2) similarity of the parties, (3) and similarity of the issues.  *Kohn L. Grp., Inc.*, 787 F.3d at 1240.

On September 24, 2021, third-party Dr. Donald Morisky filed a lawsuit against MMAS in the Western District of Washington. *See* Kachner Decl., Ex. 11.  Dr. Morisky alleged (among other things) that he is the exclusive owner of the Morisky Widget and that MMAS has infringed the work. *Id.* at ¶¶ 2, 96–107. The case is currently set for trial in early 2026.

Here, MMAS alleges that UCL infringed the same copyright at issue in the Washington litigation, *i.e.* the Morisky Widget.  *See* FAC ¶ 148.  If Dr. Morisky prevails on his ownership claim for the Morisky Widget copyright, MMAS would lack standing to sue UCL for infringement.  *See Righthaven LLC*, 716 F.3d at 1169.  Since the earlier-filed Washington litigation will determine the ownership of MMAS's asserted copyright, it would be more efficient for the Court to dismiss this case now so that the ownership issue can be resolved first.  Indeed, another court in this district has likewise dismissed MMAS's similar copyright claims under the first-to-file rule.  *MMAS Rsch. LLC v. Johnson & Johnson Innovative Med.*, 2025 WL 2659226, at *5 (C.D. Cal. Aug. 25, 2025).

## F.    The Court Should Exercise Its Discretion and Sanction MMAS

Federal Rule of Civil Procedure 11 authorizes the Court to impose sanctions when an attorney files a pleading presented for an improper purpose or where the claims are not warranted by existing law.  Fed.R.Civ.P 11(b).  Rule 11 provides a 21 day safe-harbor before a party can request sanctions.  Fed.R.Civ.P

11(c)(2). This safe-harbor provides an offending attorney time to withdraw or otherwise correct the violation and avoid sanctions. *Id.*

Before MMAS filed its First Amended Complaint, on August 29, 2025, UCL notified MMAS of all legal defects addressed in this motion. Kachner Decl., Ex. 2. Specifically, UCL explained that (1) MMAS's claim for copyright infringement fails because it is based on extraterritorial activities, (2) MMAS's alleged copyright covers an algorithm that is not subject to copyright protection, (3) MMAS's trade secret claim fails because MMAS published the alleged trade secret years ago, and (4) without a valid copyright or trade secret claim, MMAS's contract claim also fails. Kachner Decl., Ex. 2.

Two months after UCL alerted MMAS to these legal defects, MMAS filed its First Amended Complaint that maintained the same defective claims against UCL. Dkt 41. Before bringing this motion, counsel for UCL met and conferred with counsel for MMAS on October 31, 2025, to reiterate that MMAS's First Amended Complaint remained defective. Kachner Decl. ¶ 2. Accordingly, when MMAS filed its First Amended Complaint, MMAS knew it could not state a copyright claim. Indeed, another court twice dismissed MMAS's copyright claims directed to foreign activity, and the 9th Circuit affirmed. *See MMAS Rsch. LLC,* 2:21-cv-01406, Dkt. 47 at 9-11 (Ex. 12), *MMAS Rsch. LLC,* 2023 WL 2379214, at *6, *aff'd* No. 23-55202, 2024 WL 1086873, at *1. MMAS also already knew its copyright was invalid. Kachner Decl., Ex. 2. MMAS also knew its alleged trade secret was already published. *Id.*

Respectfully, the Court should sanction MMAS for maintaining a facially deficient complaint and forcing UCL to bring this motion to dismiss. *See EscapeX IP, LLC v. Google LLC,* --F.3d--, 2025 WL 3274847, *4-5 (Fed. Cir. Nov. 25, 2025) (Affirming sanctions for attorneys' fees, where defendant informed plaintiff of the defects in their case by letter, and plaintiff persisted with frivolous lawsuit). Since July 2025, MMAS brought 8 lawsuits against more than

-18-

50 defendants based on similar baseless allegations.  Kachner Decl., ¶ 3.  Absent a sanction, MMAS will feel empowered to continue to bring its baseless claims against others.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  December 1, 2025    By: */s/ Mark D. Kachner*
Mark D. Kachner
Matthew J. Petersen

*Attorneys for Defendant*
*University College London*

-19-

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendant University College London, certifies that this brief contains 5,450 words, which complies with the word limit of L.R. 11-6.1.

Dated:  December 1, 2025      By: <u>*/s/ Mark D. Kachner*</u>
                              Mark D. Kachner

                              *Attorneys for Defendant*
                              *University College London*

62304258