Craig J. Englander
Lewin & Englander
9340 Eton Avenue,
Chatsworth, CA 91311
310.208.9644

*Attorney for Defendant,*
*King's College London*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MMAS RESEARCH LLS, a Washington limited liability Company,<br><br>          Plaintiff,<br><br>     vs.<br><br>UNIVERSITY COLLEGE LONDON, et al.<br><br><br>          Defendants. | Case No.: 2:25-cv-6314-WLH-E<br><br>Hon. Wesley L. Hsu<br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF KING'S COLLEGE LONDON'S MOTION TO DISMISS THE COMPLAINT**<br><br>Name of Judicial Officer:  Wesley L. Hsu<br>Courtroom Number: 9B<br>Date & Time of Hearing: 09/04/26<br>                    1:30 p.m |

# TABLE OF CONTENTS

Page No.

I.  INTRODUCTION ................................................................ 1

II.  BACKGROUND ................................................................ 3

III.  LEGAL STANDARDS ......................................................... 4

    A.  Failure to State a Claim ................................................ 4

    B.  Extraterritorial Jurisdiction ........................................... 5

IV.  ARGUMENT ..................................................................... 5

    A.  MMAS Fails to State a Copyright Claim .......................... 5

        1.  The Morisky Widget is Not Copyrightable Subject Matter ................................................................ 5

        2.  The Court Lacks Subject Matter Jurisdiction Because the Alleged Copyright Infringement Occurred Outside the United States ........................ 9

        3.  MMAS Fails to Plead that KCL Copied or Reproduced the Morisky Widget Code ................... 9

    B.  MMAS Fails to State a Claim for Trade Secret Misappropriation ................................................ 10

    C.  MMAS's Contract Claim Fails as a Matter of Law ........... 14

        1.  Copyright Law Preempts MMAS's Breach Allegations ............................................................ 14

        2.  The Court Should Dismiss MMAS's Breach Allegation that is Untethered From the Contract ..... 15

i

3.      The Court Should Refuse Supplemental
Jurisdiction Over MMAS's Contract Claim ............    15

D.      Leave to Amend Would be Futile ......................................    16

E.      The First-to-File Rule Bars MMAS's Copyright Claim ....    17

V.      Conclusion .......................................................................    18

# TABLE OF AUTHORITIES

**Page No(s).**

*Acri v. Varian Assocs., Inc.*,
114 F.3d 999 (9th Cir. 1997) ..................................................................16

*Adherence v. CVS Pharmacy, Inc.*,
2025 WL 1798883 (D. Nev. June 25, 2025)................................................2,7,8

*Advanz Behav. Mgmt. Res., Inc. v. Miraflor*,
21 F. Supp. 2d 1179 (C.D. Cal. 1998) ........................................................8

*Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.*,
69 F.3d 381 (9th Cir. 1995) ....................................................................9

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
946 F.2d 622 (9th Cir. 1991) ..................................................................17

*AlterG, Inc. v. Boost Treadmills LLC*,
388 F. Supp. 3d 1133 (N.D. Cal. 2019).......................................................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................4,5

*Attia v. Google LLC*,
983 F.3d 420 (9th Cir. 2020) ...............................................................10,11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................4

*Best Carpet Values, Inc. v. Google, LLC*,
90 F.4th 962 (9th Cir. 2024) ...................................................................6

*Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*,
149 F. Supp. 3d 1167 (N.D. Cal. 2015) .......................................................10

*Carnegie-Mellon Univ. v. Cohill*,
484 U.S. 343 (1988)............................................................................16

*CCC Info. Serv., Inc. v. Maclean Hunter Market Reps., Inc.*,
44 F.3d 61 (2d Cir. 1994).......................................................................6

*CJ Freshway Am. Corp. v. Meshquat Int'l Trading Co.*,
2022 WL 16942831 (C.D. Cal. Sept. 2, 2022) ...............................................15

*Eminence Cap., LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ..................................................................16

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991) ................................................................................ 10

*In re Ford Motor Co.*,
   264 F.3d 952 (9th Cir. 2001)......................................................................5

*G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*,
   958 F.2d 896 (9th Cir. 1992)....................................................................14

*GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc.*,
   2016 WL 11756835 (C.D. Cal. Oct. 19, 2016)....................................... 11

*Kabehie v. Zoland*,
   102 Cal. App. 4th 513 (2002)...................................................................15

*Kohn L. Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*,
   787 F.3d 1237 (9th Cir. 2015)................................................................. 17

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ................................................................................5,9

*MMAS Rsch. LLC v. Charité*,
   2023 WL 2379214 (C.D. Cal. Feb. 28, 2023)......................................... 16

*Mollett v. Netflix, Inc.*,
   795 F.3d 1062 (9th Cir. 2015).....................................................................4

*Moreland Apartments Assocs. v. LP Equity LLC*,
   2019 WL 6771792 (N.D. Cal. Dec. 12, 2019) ........................................ 11

*Nextdoor.Com, Inc. v. Abhyanker*,
   2013 WL 3802526 (N.D. Cal. July 19, 2013).......................................... 13

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
   678 F.2d 93 (9th Cir. 1982) ..................................................................... 17

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
   442 F.3d 741 (9th Cir. 2006).................................................................... 13

*Righthaven LLC v. Hoehn*,
   716 F.3d 1166 (9th Cir. 2013)................................................................. 18

*Ruckelshaus v. Monsanto Co.*,
   467 U.S. 986 (1984) ................................................................................ 11

iv

*Rumble, Inc. v. Daily Mail & Gen. Tr. PLC*,
  2020 WL 2510652 (C.D. Cal. Feb. 12, 2020)...............................................14

*Siegler v. Sorrento Therapeutics, Inc.*,
  2019 WL 3532294 (S.D. Cal. Aug. 2, 2019) ....................................................6

*Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*,
  24 F.3d 1088 (9th Cir. 1994).............................................................................9

*Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*,
  830 Fed. App'x. 821 (9th Cir. 2020)..................................................................5

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*,
  368 F.3d 1053 (9th Cir. 2004).........................................................................16

*Wagner Aeronautical, Inc. v. Dotzenroth*,
  2022 WL 6837701 (S.D. Cal. Oct. 7, 2022) ....................................................11

## OTHER AUTHORITIES

17 U.S.C. § 106 ...............................................................................................10

17 U.S.C. § 301 ...............................................................................................15

18 U.S.C. § 1839 .............................................................................................10

28 U.S.C. § 1367 .........................................................................................15,16

37 C.F.R. § 202.1 ...............................................................................................7

Fed. R. Civ. Evid. 201 .....................................................................................13

Defendant King's College London ("KCL") respectfully submits this Memorandum in support of its Motion to Dismiss Plaintiff MMAS Research LLC's ("MMAS") First Amended Complaint with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## I.  INTRODUCTION

MMAS has filed dozens of lawsuits against more than 100 defendants asserting the same unenforceable intellectual property. Nearly all of the defendants are distinguished research universities, like KCL, or corporations developing life-saving medicines or other treatments.

In this matter, MMAS accuses KCL of infringing the Morisky Widget copyright and misappropriating a coding and scoring trade secret, both of which relate to a medicine adherence test developed by a third-party, Dr. Donald Morisky. MMAS also accuses KCL of breaching a license agreement related to the same intellectual property. For numerous reasons, MMAS fails to state a claim against KCL.[1]

---

[1] In 2022, MMAS filed suit against KCL and certain individual defendants in this Court – Case No. 2:22-cv-01479-DMG-JPR (the "2022 Case"). In the 2022 Case, MMAS, like it does here, brought claims for breach of contract, copyright infringement, and misappropriation of trade secrets, arising from KCL's alleged misappropriation and improper use of the MMAS Morisky Widget. The parties entered into a confidential settlement agreement (which MMAS publicly filed as an exhibit to its First Amended Complaint in this action as Exhibit 8C) wherein MMAS fully released and forever discharged all claims it had against KCL and the other

1

First, MMAS's alleged copyright is invalid. The asserted "Morisky Widget" covers computer code to administer and score a test developed by a third party.[2]  Another court already invalidated a copyright for the underlying test. *Adherence v. CVS Pharmacy, Inc.,* 2025 WL 1798883, at *4 (D. Nev. June 25, 2025).  The Morisky Widget is not separately copyrightable as computer code, and therefore, any claim of infringement of that code is inappropriate.

Second, MMAS does not allege any domestic act of copyright infringement. As the United States Copyright Act does not extend to extraterritorial acts, any claim in this litigation for infringement of copyrights is improper.

Third, MMAS's alleged trade secrets are not secret and are thus

---

defendants regarding the MMAS Widget copyrights and trade secrets, as well as any breach of contracts claims it had up to and including the March 9, 2023 effective date. Notwithstanding MMAS' allegations to the contrary, each of KCL's alleged acts of impropriety asserted in the instant litigation occurred prior to the effective date of that settlement agreement.  KCL has advised MMAS that the 2023 settlement agreement releases the claims of the current suit against it and intends on seeking sanctions against MMAS for its frivolous and vexatious filing when those facts are established during discovery.

[2] As discussed below, the Western District of Washington in case no. C21-1301-RSM has entered judgment against MMAS in litigation wherein ownership of the same copyrights at issue here are being determined.  It is expected that a final judgment will soon be entered against MMAS with regard to the developer's claim of copyright ownership, and, that as a result, MMAS will be barred from claiming ownership of the copyrights and trade secrets at issue here.

2

unenforceable. The alleged trade secrets have been repeatedly published over the past four decades. MMAS cannot now claim this published information is protected as a trade secret.

Finally, MMAS's breach of contract claim is preempted by copyright law, because the contract and copyright claims depend on the same factual allegations.

Upon information and belief, MMAS has been warned of each legal defect in its Complaint by at least co-Defendant University College London by virtue of its Motion to Dismiss. *See* ECF 56, 57 and 58. MMAS nevertheless continues to maintain these claims.

## II. BACKGROUND

MMAS alleges that it owns a copyright registration entitled "MMAS Research Widget Code" (Reg. No. TX 8-816-517), that MMAS calls the "Morisky Widget." FAC ¶ 7.[3] MMAS alleges the Morisky Widget is computer code that is a "derivative" of third-party Dr. Donald Morisky's Morisky Medication Adherence Scales. FAC ¶¶ 17-20. MMAS further alleges that these Scales are paper tests designed to measure medication adherence, one consisting of four questions ("MMAS-4") and another

---

[3] All references to FAC are to MMAS's First Amended Complaint, Dkt. 41.

3

consisting of eight questions ("MMAS-8"). FAC ¶ 32. The copyright registrations for the paper MMAS-4 test (Reg. No. TX 8-285-390) and MMAS-8 test (Reg. No. TX 8-632-533) tests are both owned by Dr. Morisky, not MMAS. MMAS explains that the Morisky Widget measures medication adherence, like the paper tests. FAC ¶ 35.

MMAS accuses KCL of infringing the Morisky Widget copyrights by administering generic MMAS-8 assessments through registered nurses in the Clinical Trials Research Unit who sent patients a link to a certain questionnaire (known as the REDCap Electronic Questionnaire) which administered, scored, and coded generic assessments.  FAC ¶ 56.

MMAS further accuses KCL of trade secret misappropriation. Specifically, MMAS alleges that KCL "misappropriated trade secret Morisky Widget, MMAS-4 and MMAS-8 specific scoring and coding criteria and shared it with third parties and with anyone who had access to the internet." FAC ¶ 172.

### III. LEGAL STANDARDS

### A.    Failure to State a Claim

A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Mollett v. Netflix, Inc.*,

4

795 F.3d 1062, 1065 (9th Cir. 2015). For a claim to be facially plausible, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Dismissal is warranted where a complaint fails to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

**B.   <u>Extraterritorial Jurisdiction</u>**

The plaintiff bears the burden of proving that its case is properly in federal court. *In re Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001). Courts presume lack of subject matter jurisdiction and the "burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The Court lacks subject matter jurisdiction over copyright claims where all alleged infringing conduct occurred outside of the United States as the case is here. *Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*, 830 Fed. App'x. 821, 823-24 (9th Cir. 2020).

5

## IV.  ARGUMENT

### A.      MMAS Fails to State a Copyright Claim

#### 1.      The Morisky Widget is not Copyrightable Subject Matter

MMAS alleges it owns a copyright registration entitled "MMAS Research Widget Code" (Reg. No. TX 8-816-517) that MMAS calls the "Morisky Widget." MMAS concedes the Morisky Widget is a computer "algorithm" version and "derivative" of two paper tests and scoring criteria owned by third-party Dr. Donald Morisky. FAC ¶¶ 17-20, 170. The paper tests are called MMAS-4 and MMAS-8, and include four and eight questions, respectively, to evaluate patients' adherence to medication schedules. FAC ¶¶ 30-32. MMAS alleges that the Morisky Widget includes "MMAS-4 and MMAS-8 scoring and coding algorithms" and "test/translation editor algorithms." FAC ¶¶ 33-34, 170.

The U.S. Copyright Act extends no copyright protection to functional aspects of algorithms. In this regard, the Copyright Act states: "In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b). Courts thus deny

copyright protection for "mathematical principles," "technical methods," "formulas," and "algorithms." *Siegler v. Sorrento Therapeutics, Inc.*, 2019 WL 3532294, at *10 (S.D. Cal. Aug. 2, 2019) (citing *CCC Info. Serv., Inc. v. Maclean Hunter Market Reps., Inc.*, 44 F.3d 61, 73 (2d Cir. 1994)). Copyright protection does not extend to "functional aspects of a computer program...algorithms, formatting, functions, logic, or system design." Copyright Circular 61; *see Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962, 971 (9th Cir. 2024) (explaining that copyright protects only expressive elements of software, such as literal code, the user interface, and the user experience).

The District of Nevada applied this precise principle to invalidate Dr. Morisky's copyrights for the MMAS-4/8 tests and scoring criteria. *Adherence*, 2025 WL 1798883, at *4. Dr. Morisky—through a corporate entity called Adherence— had accused CVS Health of infringing the MMAS-4 and MMAS-8 copyrights. The court dismissed, finding that the MMAS-4/8 tests and scoring criteria are not properly the subject of copyright protection. The tests are merely "blank forms" that "are primarily designed to record information, and the accompanying text simply provides instruction to assist in completing the form." *Adherence*, 2025 WL 1798883, at *1, 4; *see* 37 C.F.R. § 202.1(c) ("Blank forms, such as time cards, graph paper, account books, diaries, bank

7

checks, scorecards, address books, report forms, order forms and the like, which are designed for recording information and do not in themselves convey information" not subject to copyright).

MMAS-4/8's "scoring algorithms" are also not protectable. *Adherence*, 2025 WL 1798883, at *2–3. An "algorithm, even if useful in application, constitutes a method or system, and the forms used to implement it are functional tools for data collection, not original expression entitled to copyright protection." *Id.* at *3 ("a system or art of practical utility cannot be copyrighted, no matter what the manner of its representation") (*quoting Advanz Behav. Mgmt. Res., Inc. v. Miraflor*, 21 F. Supp. 2d 1179, 1184 (C.D. Cal. 1998)).

Because MMAS-4/8 tests and scoring criteria are not copyrightable, the Morisky Widget is also not subject to copyright protection. The Morisky Widget is merely a computer utilized version of the "MMAS-4 and MMAS-8 scoring and coding algorithms." FAC ¶ 170. As MMAS admitted, the Morisky Widget simply contains an algorithm that scores the MMAS-4 and MMAS-8 tests. FAC ¶¶ 33, 170. MMAS' description of the Morisky Widget matches the *Adherence* court's description of MMAS-4 and MMAS-8. *Compare id*. ("The Morisky Widget MMAS-8/4 were four and eight dynamic medication and condition specific questions, which produced three scores, one for raw adherence, one for intentional non-adherence and one for unintentional non-

adherence.") *with Adherence*, 2025 WL 1798883, at *1 (MMAS-4/8 "are designed to assess a patient's likelihood of adhering to prescribed medication regimens and form the core of the Morisky Medication Adherence Protocol" algorithm). Because the Morisky Widget is merely a computer code version of MMAS-4/8 and scoring criteria, the Morisky Widget is not copyrightable.

### 2. The Court Lacks Subject Matter Jurisdiction Because the Alleged Copyright Infringement Occurred Outside of the United States

MMAS's copyright claim must also be dismissed because KCL's purported infringement occurred entirely outside of the United States. The Ninth Circuit has long recognized that "the United States copyright laws do not reach acts of infringement that take place entirely abroad." *Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1098 (9th Cir. 1994). In order for United States copyright law to apply, "at least one alleged infringement must be completed entirely within the United States." *Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.*, 69 F.3d 381, 387 (9th Cir. 1995).

In its First Amended Complaint, MMAS alleges that KCL and its researchers infringed the Morisky Widget and the MMAS-4 copyrights by participating in the ROSETTA STUDY. FAC ¶ 159. The ROSETTA STUDY was conducted entirely outside the United States. KCL is resident in the UK and MMAS alleges no conduct by KCL having taken place in the United States. As a result, MMAS has failed to meet its burden of establishing subject matter jurisdiction. *Kokkonen*, 511 U.S. at 377.

### 3. MMAS Fails to Plead that KCL Copies or Reproduced the Morisky Widget Code

Even if the Morisky Widget were somehow protectable, and even if KCL had committed any infringing acts in the United States, MMAS' claim still fails to plead infringement. A thorough reading of the First Amended Complaint reveals that MMAS never alleges KCL committed any act that could constitute copyright infringement.

The Copyright Act provides exclusive rights to copyright holders to reproduce, prepare derivative works of, distribute, perform, or display the copyrighted work. 17 U.S.C. § 106.  To state a claim for copyright infringement MMAS must plausibly allege, *inter alia*, that KCL "cop[ied] constituent parts of the work that are original." *Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*, 149 F. Supp. 3d 1167, 1172 (N.D. Cal. 2015) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

MMAS alleges that KCL infringed by using MMAS-4 tests when it participated in and published the ROSETTA STUDY. FAC ¶¶ 137-140; 158-161.  But MMAS never alleges the ROSETTA STUDY copied constituent parts of the Morisky Widget Code.  Accordingly, MMAS fails to properly allege an infringement.

### B. MMAS Fails to State a Claim for Trade Secret Misappropriation

MMAS alleges KCL misappropriated its trade secrets under the Defend Trade Secrets Act ("DTSA"). FAC ¶¶ 165-178. To state a claim under DTSA, a plaintiff must allege that: "(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *AlterG, Inc. v. Boost Treadmills LLC*, 388 F.

Supp. 3d 1133, 1144 (N.D. Cal. 2019*)*. Under the DTSA, a trade secret must "derive[] independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3)); *see Attia v. Google LLC*, 983 F.3d 420, 424 (9th Cir. 2020).

MMAS fails to show it owned an intellectual property asset that was maintained in secret. "If an individual discloses his [alleged] trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984); *see Attia*, 983 F.3d at 425 (trade secret extinguished by publishing in patent application); *GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc.*, 2016 WL 11756835, at *11 (C.D. Cal. Oct. 19, 2016) (owner of trade secrets ended its rights by disclosing them to others without a confidentiality agreement); *Wagner Aeronautical, Inc. v. Dotzenroth*, 2022 WL 6837701, at *5 (S.D. Cal. Oct. 7, 2022) (disclosure of trade secrets with no "indicia of secrecy on the documents suggests that the information was not truly secret."). Publicly filing purported trade secrets in a court pleading also terminates any trade secret rights to the disclosed information. *Moreland Apartments Assocs. v. LP Equity LLC*, 2019 WL 6771792, at *4 (N.D. Cal. Dec. 12, 2019) ("because the [trade secrets] can be accessed on publicly available databases ... the public docket for this case, and databases like LexisNexis ... [the information] are not protectable trade secrets.")

MMAS claims trade secret rights to "MMAS-4 scoring and coding criteria." *See, e.g.,* FAC ¶¶ 42, 51, 53, 61, and 63. But, as pointed out by

11

University of London in its Motion to Dismiss (Dx. 57, 58 and 58-1), Dr. Morisky, MMAS' cofounder and creator of MMAS-4, published MMAS-4 and the scoring and coding criteria in 1986. *See* Kachner Decl. (Dx. 58-1), Ex. 10 at 69 ("Scoring: high-low, yes = 0, no = 1"). As further made clear by the University of London, the MMAS-4 scoring and coding criteria were published again in 2019 on the National Library of Medicine website. *Id.*, Ex. 4 (Ex. D to AbbVie Complaint). That website was still active as of December, 2025 and disclosed the MMAS-4 scoring and coding criteria:

| Outcome Measure | Measure Description |
| --- | --- |
| Change in Morisky Medication Adherence Scale (MMAS) Scores From Month 3 to Month 12 | The MMAS is a 4-item self-reported measure of medication-taking behavior. It measures intentional and non-intentional non-adherence (based on forgetting, carelessness, stopping medication when feeling better, or stopping medication when feeling worse). The MMAS consists of 4 questions which can be answered with Yes (0) and no (1). The MMAS score is the sum of all four questions and ranges from 0 (non-adherent) to 4 (adherent). |

*Id.*, Ex. 13 (https://clinicaltrials.gov/study/(NT01768858).

MMAS itself has published the MMAS-4 scoring and coding criteria in litigation filings. *MMAS Research LLC v. AbbVie KTF*, 2:21-cv-06315, Dkt. 1 (C.D. Cal. Aug. 5, 2021) (Exs. 3, 4). MMAS admitted that Exhibit D to its AbbVie Complaint disclosed "MMAS-4 coding and scoring criteria." *Id.*, Ex. 3 (AbbVie Complaint) at ¶¶ 54, 59. MMAS identified "MMAS-4 coding and scoring criteria," exactly as it appears on the National Library of Medicine website:

> **Morisky Medication Adherence Scale (MMAS)**
>
> The MMAS is a 4-item Self-Report Measure of Medication-Taking Behavior. It measures both intentional and non-intentional non-adherence (based on forgetting, carelessness, stopping medication when feeling better, or stopping medication when feeling worse). The 4-item

12

> MMAS-4-item consists of 4 questions which can be answered with yes (-0 point) and no (-1 point).   The MMAS score is the sum of all four question and range from 0 (=non-adherent) to 4 (=adherent).

*Id.*, Ex. 4 (Ex. D to AbbVie Complaint).

MMAS disclosed the same information in numerous public filings across the country. *Id.*, Ex. 5 (Duke Complaint) at ¶¶ 138, 122-126; Ex. 6 (Dana Farber Complaint) at ¶¶ 21-23; Ex. 9 (UMass Complaint) at ¶ 93-95; 9799. MMAS's public filings also regularly identify articles that MMAS alleges publicly disclose its alleged trade secrets. *Id.*, Ex. 3 (AbbVie Complaint) at ¶¶48-49; Ex. 5 (Duke Complaint) at ¶ 136 (referencing Ex. Q (included at Kachner Ex. 8)); ¶ 122 (referencing Ex. O (included at Kachner Ex. 7)); Ex. 6 (Dana Farber Complaint) at ¶¶ 21-23 (referencing publicly available Pallas Study); Ex. 9 (UMass Complaint) at ¶ 91 (referencing publicly available UMass/Carrera Study). MMAS's widespread disclosure of the information it contends constitutes a trade secret destroys any trade secret rights in that information.[4]

---

[4] The Court should take judicial notice of MMAS's public filings that contradict MMAS's allegation that the information is a secret. *See e.g.*, FAC ¶ 166. Courts routinely take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746, n.6 (9th Cir. 2006) (judicially noticing court filing); *Nextdoor.Com, Inc. v. Abhyanker*, 2013 WL 3802526, at *7 n.6 (N.D. Cal. July 19, 2013) (judicially noticing patent application disclosing alleged trade secret to dismiss trade secret claim).

MMAS's numerous public filings also contradict its allegations that it "consistently implemented robust measures to maintain the secrecy of" MMAS-4 scoring and coding criteria. *See* FAC ¶ 166. MMAS's public filings—and Morisky's public disclosure dating back to 1986—also contradict MMAS's allegation that the trade secrets "are not generally known to others," and that they provide MMAS "with a significant competitive advantage." *Id*. By systematically disclosing its alleged trade secrets, MMAS cannot establish that the MMAS-4 scoring and coding criteria is secret or valuable by virtue of its secrecy. Accordingly, MMAS' trade secret claims must be dismissed.

### C. **MMAS's Contract Claim Fails as a Matter of Law**

MMAS's First Amended Complaint further accuses KCL of breaching the Morisky Widget license (the "License Agreement"). FAC ¶¶ 137-142. Each breach allegation is based on the same factual allegations underlying MMAS's copyright claim. Copyright law, however, preempts state law claims based on the same factual allegations. In addition, certain breach allegations also fail as a matter of law because MMAS identifies no contractual obligation breached by KCL. Further, because MMAS's federal copyright and trade secret claims fail as a matter of law, to the extent MMAS has any breach claim remaining, the Court should decline to extend supplemental or diversity jurisdiction.

#### 1. **Copyright Law Preempts MMAS' Breach Allegations**

"Copyright preemption is both explicit and broad: 17 U.S.C. § 301(a) prohibits state-law protection for any right equivalent to those in the Copyright Act." *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896,

904 (9th Cir. 1992). All MMAS allegations of breach relate to KCL's purported copyright infringement concerning the Morisky Widget and MMAS-4. *See* FAC ¶¶ 127-132. Indeed, each MMAS breach allegation accuses KCL of improperly using the Morisky Widget or MMAS-4. *Id.* MMAS's breach of contract claim thus seeks to enforce MMAS' purported copyrights. The breach of contract claim is thus preempted by the Copyright Act. *Rumble, Inc. v. Daily Mail & Gen. Tr. PLC*, 2020 WL 2510652, at *4 (C.D. Cal. Feb. 12, 2020); *see Kabehie v. Zoland*, 102 Cal. App. 4th 513, 526 (2002) ("The promise not to infringe adds nothing to a breach of contract action for copyright infringement. A breach of contract action based on this type of promise must be preempted in order to prevent parties from circumventing federal copyright law and nullifying the preemption provided for in [17 United States Code] section 301.") The Court should dismiss MMAS's breach of contract claim because it is preempted by the Copyright Statute.

### 2.    The Court Should Dismiss MMAS's Breach Allegation that is Untethered From the Contract

MMAS alleges that KCL breached the License Agreement by "not scoring and coding all MMAS tests through the Morisky Widget." FAC ¶ 127. But KCL has no obligation under the License Agreement to score and code all MMAS tests through the Morisky Widget. MMAS identifies no provision of the License Agreement that KCL allegedly breached. MMAS cannot state a claim for breach of contract, where the contract itself does not require KCL to take the accused action. *CJ Freshway Am. Corp. v. Meshquat Int'l Trading Co.*, 2022 WL 16942831, at *2 (C.D. Cal. Sept. 2, 2022) (dismissing contract claim where the claimant did not identify term allegedly breached). Accordingly, the Court should dismiss MMAS's breach of contract claim based on alleged actions KCL was never obligated to take.

15

### 3.    The Court Should Refuse Supplemental Jurisdiction Over MMAS's Contract Claim

To the extent the Court determines MMAS has any valid contract claim, the Court should decline to exercise supplemental jurisdiction over the single state law claim.  28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction.")  "The Supreme Court has stated, and [the Ninth Circuit] ha[s] often repeated, that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 US. 343, 350 n.7 (1988)).  Indeed, this District previously refused supplemental jurisdiction over MMAS's contract claims against a third-party, after dismissing MMAS's federal claims.  *MMAS Rsch. LLC v. The Charité*, No. 2:21-cv-01406, Dkt. 47 at 12-13 (C.D. Cal. Nov. 4, 2022).

Here, MMAS alleges the Court has federal question jurisdiction over its copyright and Defend Trade Secret Act claims, as well as "supplemental jurisdiction over [its] state law claims under 28 U.S.C. § 1367." FAC ¶¶ 1-2. Because the copyright and trade secret claims fail as a matter of law for all the reasons discussed above, *see supra* Secs. IV.A-B, the Court should decline supplemental jurisdiction over any remaining state law breach of contract claim and dismiss the case in its entirety.

## D.    Leave to Amend Would be Futile

The Court should dismiss MMAS's case against KCL with prejudice because any amendment would be futile. *See Thinket Ink Info. Res., Inc. v. Sun*

16

*Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004). Leave to amend is futile if "it is clear ... that the complaint [can]not be saved by any amendment." *Id.* (citing *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)).

The Morisky Widget is not subject to copyright protection as a matter of law. *See supra*. No amended factual allegation could possibly convert the nature of MMAS's copyright into protectable subject matter.

MMAS also publicly disclosed the alleged trade secrets. *See supra*. No amended factual allegation could possibly cure MMAS's public disclosure and convert MMAS-4 scoring and coding criteria into a trade secret.

Finally, no amended factual allegation will justify the Court extending supplemental or diversity jurisdiction over any possible remaining contract claim.

**E.    The First-to-File Rule Bars MMAS's Copyright Claim**

For all the reasons stated above, the Court should dismiss MMAS' claims with prejudice. But, to the extent the Court determines MMAS might have any protectible copyrights, the Court should still dismiss that claim under the first-to-file rule as a different Court will soon determine whether or not MMAS owns the Morisky Widget copyright.

The first-to-file rule allows a district court to stay or dismiss proceedings "if a similar case with substantially similar issues and parties was previously filed in another district court." *Kohn L. Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015); *see Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 97 (9th Cir. 1982) (affirming dismissal of substantially similar action).

17

The first-to-file rule is intended to "serve[ ] the purpose of promoting efficiency and should not be disregarded lightly." *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991). In determining whether to apply the first-to-file rule, the Court should analyze three factors: (1) chronology of the lawsuits, (2) similarity of the parties, (3) and similarity of the issues. *Kohn L. Grp., Inc.*, 787 F.3d at 1240.

On September 24, 2021, Dr. Donald Morisky filed a lawsuit against MMAS in the Western District of Washington. *See* Kachner Decl. (Dk. 58 and 58-1), Ex. 11. Dr. Morisky alleged (among other things) that he, not MMAS, is the exclusive owner of the Morisky Widget and that MMAS has infringed the work. *Id.* at ¶¶ 2, 96–107.

On April 21, 2026, the Western District of Washington entered an Order for Entry of Default directing the Clerk of the Court to enter default against MMAS and further directing Dr. Morisky to file a motion for default judgment. It is expected that in the coming weeks, the Western District of Washington will enter judgment finding that Dr. Morisky, not MMAS, is the true owner of the copyrights.

Here, MMAS alleges that KCL infringed the same copyrights at issue in the District of Washington case, *i.e.* the Morisky Widget. *See* FAC ¶ 148. Once judgment is entered in favor of Dr. Morisky, MMAS would lack standing to sue KCL for infringement. *See Righthaven LLC*, 716 F.3d at 1169.

## V. Conclusion

Wherefore, for the reasons set forth herein, King's College London respectfully requests that the entirety of MMAS' First Amended Complaint be dismissed with prejudice.

Respectfully submitted,

18

Dated: July 27, 2026    By: _Craig Englander_

Craig J. Englander
Lewin & Englander
9340 Eton Avenue,
Chatsworth, CA 91311
310.208.9644

*Attorney for Defendant,*
*King's College London*

Steven E. Tiller (*pro hac* motion to be filed)
Whiteford, Taylor & Preston, LLP
7 St. Paul Street
Suite 1500
Baltimore, MD 21032
410.347.9425

19

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant King's College London, certifies that this brief contains 5,450 words, which complies with the word limit of L.R. 11-6.1.


Dated: _____                    By: */s/ Mark D. Kachner*
                                               Mark D. Kachner

                                               *Attorneys for Defendant*
                                               *Kings College London*

4912-5913-7211, v. 2